478

The People of the State of New York, Respondent, *v.* James Kelly, Appellant.

Fourth Department, July 9, 1959.

*John J. Cooney* for appellant.

*Carman F. Ball* (*Leonard F. Walentynowicz* of counsel), for respondent.

Kimball, J. The defendant-appellant was convicted in the County Court of Erie County of the crime of robbery in the first degree. As a second offender, he was sentenced to a term of from 15 to 30 years. The indictment upon which he was tried

accused appellant and one "John Doe " (a fictitious name) with the crime, alleging that each " being aided by the other actually present, feloniously robbed Francis Ledger against his will and by placing him in fear of immediate injury by taking from his person and possession sixty cents in money and a cigarette lighter which he then and there had." Who " John Doe " was is not disclosed. The appellant only was placed on trial.

The case for the People rests on the testimony of the complainant Ledger and that of the police officer McCarthy. Were it not for the written statement made by the appellant to the police which was received in evidence, it is difficult to see how the People made out a case for the jury. The alleged robbery was on a Saturday evening in the vicinity of Eagle Street and Michigan Avenue, Buffalo, New York, May 11, 1957. The appellant was apprehended in an alley in that neighborhood about 10:00 P.M. The complainant and the police officer do not agree on just where the robbery took place. The complainant testified that two men, who he said were colored, came up behind him on Eagle Street; that one put his hands on his shoulder and the other took from his pocket 60 cents and a cigarette lighter. He said he was frightened and called for help and saw a policeman chasing them down the alley. He made no complaint or report to the police either then or at the station house. He simply disappeared that night. It was two days later that the police saw him on a corner and took him to headquarters to make a statement. It was May 27, 1957, however, before he made information charging the appellant with robbery. Upon the trial, this witness testified that he could not identify the appellant as the person who robbed him. He said the information charging robbery was signed by him but was dictated by the officers; that he did not tell the police that James Kelly was one of the persons who robbed him; that he could not say that the James Kelly present was one of the persons.

Officer McCarthy was in a police car at Michigan and Eagle Streets and heard a man calling for help. He testified he saw Ledger and two colored men running north on Michigan, one of whom he said was appellant; that the two went west on Eagle Street and then south into the alley. He says he backed up his car and called upon them to halt; that the appellant stopped and the other man kept running. He searched appellant and found nothing. He took him into custody, turned him over to other officers and tried to find Ledger. Officer McCarthy, of course, could only say that the defendant was the man he found in the alley. He did not and could not testify that it was Kelly who

took part in the alleged robbery. Thus, except for the statement signed by the appellant on Monday afternoon, May 13, 1957, at headquarters, there is no evidence which identifies the defendant-appellant as being one of the men who Ledger claimed had robbed him.

The written statement which was received in evidence and read to the jury, was concededly signed and sworn to about 3:00 o'clock in the afternoon of Monday, May 13, 1957. The defendant had been in police custody since his arrest in the evening of Saturday, May 11. It was the defendant's testimony that he was beaten with fists and sticks by the police at headquarters on Saturday night; that he had a puncture of his ear, cuts and bruises and was knocked down. He said that he was being questioned and a number of policemen were present; that he did not admit guilt. There was no questioning or threats on Sunday, May 12. The defendant claimed that about 3:00 o'clock on Monday, May 13, Officer McCarthy came to him and asked him if he was ready to make a statement; that he replied in the negative and that he had nothing to tell; that the officer then asked him if he wanted the same thing he got Saturday night and that he was " scared and frightened." He said the statement was not the truth and that he made it because he wanted to tell his story to a judge. Officer McCarthy and Officer Turner who prepared the statement said there was no beating. No other officers who might have been present on Saturday night were called. It is undisputed that there was no arraignment on Sunday or Monday and none on Tuesday, May 14, until the afternoon of that day when defendant was arraigned on the misdemeanor charge. The case was adjourned and the defendant was continued in custody. Without going further into the testimony relating to the statement and the delay in arraignment on the misdemeanor charge, it clearly appears that there was a wide open question of fact for the jury as to whether the statement or confession was voluntary or not. If the statement was found to have been made " under the influence of fear produced by threats ", it was the jury's duty to disregard it. (Code Crim. Pro., § 395.) It is conceded that the defendant was held by the police from about 10:00 P.M. on May 11 to about 2:00 P.M. on May 14 without being produced before a magistrate. Section 165 of the Code Criminal Procedure provides that a defendant " must in all cases be taken before the magistrate without unnecessary delay ". It is a misdemeanor for a public officer having arrested a person on a criminal charge to willfully and wrongfully delay in taking such person before a magistrate.

(Penal Law, § 1844.) Unnecessary delay in arraignment should have been considered by the jury on the question of whether the statement was voluntary. There was a duty upon the Trial Judge to charge that any "unnecessary delay in arraignment is forbidden by law" and failure to so charge is error. (*People* v. *Alex*, 265 N. Y. 192, 195; *People* v. *Trybus*, 219 N. Y. 18.) The courts have repeatedly condemned the practice of delaying arraignment of a person held by police after an arrest. We join in such condemnation. As Judge LEHMAN said in the *Alex* case (p. 195, *supra*): "The law does not leave to the police discretion as to when a prisoner shall be arraigned."

We come at length to the court's charge to the jury. Although, as we view it, the statement or confession of the defendant taken on Monday afternoon was properly received in evidence, the court made no mention in the main charge of any of the sections of the statutes above referred to. The jury was not instructed as to their duty to determine, as a question of fact, whether the confession was voluntary or not nor were they told what their duty was in the event they found that the statement was not voluntary. The jury was given no instructions as to what they should consider upon the question of whether the statement was voluntary. In commenting upon the statement, the court merely stated that the police witnesses said they saw nobody threaten or abuse or frighten the defendant and that the defendant testified to the contrary. It became necessary, therefore, for defendant's counsel to make requests. A request to charge that the burden was upon the People to prove that the confession was voluntarily made and that, if such burden was not sustained, the jury should disregard it, was granted simply by saying "I so charge." At that point, it seems that the court should have been alerted to the fact that no instructions had been given previously in regard to the statement and how it should be considered but the court did not go further than to grant the request. The court was then requested to charge that defendant's detention without arraignment for two and a half days was unreasonable and illegal as a matter of law and such delay should be taken into consideration by the jury as to whether the statement was voluntary. The jury was then instructed that they should take into consideration "the reasons and everything else * * * all of the facts and circumstances into consideration." The further answer to the requests was: "The jury is entitled to know that the City Court of Buffalo does not have any meetings or is not in session on Saturdays and Sundays. They do not have any felony hearings

on those days. They are to take all those things into consideration. Otherwise it would be unreasonable and unlawful — such a delay.'' There was a further request that if the jury found that the unreasonable delay of two and a half days without arraignment was a cause of giving the statement against defendant's will, the jury must reject the statement and exclude it from consideration on the question of guilt. The charge was: '' They must find that there was an unnecessary and unwarranted delay and *that the delay itself caused them to hold up on the arraignment* of the defendant and was the cause of their securing the statement. If they find that, then they must disregard the statement.'' It does not seem quite clear as to what was meant by saying that the jury must find that '' the delay itself caused them to hold up on the arraignment.''

I think that it was the court's thought that, if the City Court of Buffalo was not open for arraignment on Saturdays or Sundays, such was a legal justification for failure of the police to promptly arraign the defendant. Whether the City Court had felony hearings on those days was irrelevant since the defendant was not then held for a felony. In any event, the statement as to Saturday and Sunday sessions of the City Court was in error. There is by statute and rule of the court a morning session of the Buffalo City Court every day of the year, including Sundays and legal holidays. (Buffalo City Court Act, § 68; L. 1909, ch. 570; Rules of City Ct. of Buffalo, rules VI, VII.) We take judicial notice that there was a session of the Buffalo City Court on the morning of Sunday, May 12, 1957 and that the court was open on Monday, May 13, 1957. We must presume that the City Court of Buffalo was conducted in accordance with the statute and its rules. It follows that there was nothing in the evidence in this case which legally justified the delay in the arraignment of the defendant. Even after the making of the statement about 3:00 P.M. on Monday, May 13, defendant was not arraigned until nearly 24 hours thereafter.

In my opinion, there was nothing to submit to the jury as to whether the delay was or was not justified. The court was open on Sunday and Monday. The defendant was not ill or incapacitated so as to require delay of arraignment. It is quite evident that he was held by the police at their pleasure and without any legal justification. The respondent argues that there was no arraignment on Monday because the defendant wished to make a statement. He was not then held for the crime of robbery to which he referred in his statement. Even if the prosecution witness is to be believed as to the reason for nonarraignment

Monday, there still was no legal justification for not arraigning the defendant on Sunday or on Monday morning or Monday afternoon on the misdemeanor charge. We may conceive of circumstances which would require a jury to pass upon the question of whether the delay was or was not necessary. This is not such a situation. We think that the defendant was entitled to the charge that the delay was illegal, unreasonable and unnecessary and that such delay had to be considered in determining the question as to whether the statement was or was not voluntary. Refusal to so charge was reversible error. (*People* v. *Snyder*, 297 N. Y. 81; *People* v. *Kozicky*, 275 App. Div. 863; *People* v. *Lovello*, 1 N Y 2d 436.)

The case went to the jury without proper and necessary instructions as to confessions and how the jury should consider them. It was not enough to tell the jury that if the statement was induced by physical harm or threats, they had to disregard it. The jury was entitled to be made cognizant of the statutes regarding arraignment and the effect of failure to comply on the part of the police. In *People* v. *Lovello* (*supra*) the court held, under the circumstances presented, that it was error to submit to the jury as a question of fact whether the delay was " unnecessary or unreasonable." In that case Judge DESMOND pointed out the seriousness of the error. He said (p. 438): " These incorrect instructions to the jury were the more serious since some of the most damaging evidence presented by the prosecution consisted of alleged admissions made by the defendant during that period of unlawful delay in arraignment." In the instant case, in the absence of the statement, a verdict of guilty could hardly be sustained. The judgment of conviction should be reversed upon the law and facts and a new trial ordered.

All concur. Present — KIMBALL, J. P., WILLIAMS, BASTOW, GOLDMAN and HALPERN, JJ.

Judgment of conviction reversed on the law and facts and a new trial granted.