Van Voorhis, J.
Robert Munos was killed and James Warga assaulted by Frank Falco on July 11, 1963 in a bar and grill on lower Second Avenue, Manhattan. Falco is dead (from other causes) and appellant has been convicted, not of being a principal in the homicide, but of being an accessory (after the fact) under section 1934 of the Penal Law and of criminally possessing a pistol under section 1897. An accessory is defined by section 2 of the Penal Law as being a person who, after the commission of a felony, harbors, conceals or aids the offender, with intent that he may escape. Appellant was identified by witnesses as having been in the bar when Munos and Warga entered, and he and Falco were .seen to have engaged in conversation before the homicide. The pistol, which he has been convicted of possessing under section 1897 of the Penal Law, was seen on his person by the owner of the bar and grill before Munos was killed, who testified to seeing a second pistol on appellant’s person immediately afterward. No witness saw Falco shoot Munos. Appellant was not prosecuted for participating in the homicide, although Warga signed a complaint *258 accusing Mm of acting in concert with Falco in the assault on him.
Plus these circumstances, appellant was charged with being an accessory on the basis of an admission against interest made to Detective Joseph A. Pickett of the Manhattan South Homicide Squad in the office of the prosecutor for Bergen County in Hackensack, New Jersey, where appellant was being held on another charge. Pickett testified that upon that occasion he told appellant that the People had a weak case in the killing of Munos, that Warga said he was hit in the face with Falco’s gun but did not actually see the shooting of Munos by Falco, and that appellant would not be charged with the homicide but that the People would like to use him as a witness. Pickett testified that appellant stated that he had been in a telephone booth on the premises and that, when he finished his telephone conversation, he walked to the rear of the bar (Falco had by then herded Munos and Warga into the kitchen, where Munos was shot behind the door, out of appellant’s presence) when he heard a shot in the kitchen by the door and that, when he opened the door, Munos was lying on the floor. Appellant told Pickett that he said to Falco ‘ ‘ ‘ What the hell you are going to do now? ’ Frank Falco said, pointing to Warga, ‘ I’m going to kill this sonofahitch.’ He says, ‘ Don’t do that. Give me the gun, you got one body here—what the hell you are going to do with two of them? ’ He said that he took the gun from Falco, walked out and stopped at the bar, and told the owner and the bartender to forget what they seen, and keep their mouths shut. He said he left, took his car, drove down to South Ferry, threw the two guns overboard by the Statue of Liberty ”.
Appellant made another statement to Assistant District Attorney Ernest Hammer, who accompanied Detective Pickett to New Jersey, in the following conversation: “He said, ‘ Well, you don’t have a case against me anyway. ’ * * * He says, ‘ You don’t, and I will tell you why.’ I said, ‘ Well, go right ahead.’ He said, 1 You’ve only got one witness against me. That guy Pickett, and you can’t make a case with only one witness.’ I laughed and I said, ‘ I have got you good’ * * * And he said, ‘ Do you mean that room was bugged ? ’ And, I said ‘ That’s right.’ He said, ‘ Holy Christ, and I never thought of that.’ So I said, ‘ Well, now you know. I have got you good.’ *259 I said, 1 what you told Pickett is what happened; isn’t it? ’. He said,6 Yeh, but I didn’t know you would bug it.’ So thereafter there was some further conversation of no great import, and then I asked the detectives to return, and he was taken out to be processed in the ordinary police manner.”
The room had not, in fact, been “ bugged ".
There was no defense.
Appellant would clearly appear to have been proved guilty of possession of the weapon in violation of section 1897 of the Penal Law.
His conviction of being an accessory was based mainly on his disposal of the lethal weapon, which he admitted having taken from the possession of Frank Falco, and his admonitions to Warga, the proprietor, bartender and others to forget about it and not do anything about prosecution. This would be enough to bring appellant within the definition of an accessory contained in section 2 of the Penal Law, as a person who, after the commission of a felony, harbors, conceals or aids the offender with intent that he may avoid or escape from arrest, trial, conviction, or punishment.
The Trial Justice charged the jury that what was testified to have been said by appellant to Detective Pickett was not stated under the influence of fear produced by threats or under any stipulation of immunity by the District Attorney (Code Crim. Pro., § 395). The jury were instructed that they would concern themselves with determining whether the statements were actually made by appellant, and, if so, whether they were true.
Exception was taken to the refusal to submit to the jury whether these statements were voluntarily made.
The voluntariness of these statements was not impugned by the misrepresentation by the Assistant District Attorney that their conversation had been recorded, or by any other deception (People v. Everett, 10 N Y 2d 500; United States ex rel. Everett v. Murphy, 329 F. 2d 68). The Federal Court of Appeals in rendering the latter decision in habeas corpus said (p. 70): “ The deception of Everett as to Finocehiaro’s survival of the attack might be ignored if it stood alone * * *. However, here it was used to make more plausible the promise of assistance to induce confession * * *. A confession induced by *260 police falsely promising assistance on a charge far less serious than the police knew would actually be brought is not to be considered a voluntary confession”. The statement of this principle, whatever its application to the Everett case, was in accord with established law in this State (People v. Kurtz, 42 Hun 335; People v. Chapman, 224 N. Y. 463; People v. Reilly, 224 N. Y. 90; People v. Leyra, 302 N. Y. 353).
In the KurtZ case, a confession was held to have been inadmissible which was obtained on the promise of a detective acting as agent of the District Attorney, that, if the accused would make a statement to the District Attorney, he would get the benefit that any State’s witness would get. It was held that the accused would naturally have believed this to have been a promise of immunity. Even so, the court made clear that it had to be shown to have been authorized by the District Attorney. Chapman’s conviction was affirmed in this court, which held that a statement against interest to a District Attorney, alleged to have been made upon the advice of a police officer that if the accused told the truth 1 ‘ may be there would be some leniency shown him ’ ’, was admissible where no further threat or promise was made to the accused, and there was nothing to connect the District Attorney with any proposition to mitigate the proceeding against him or the punishment if a confession were made. Leyra’s confession in the case cited was held to have been received erroneously, “ while deception alone * * * may not render a confession invalid ”, for the reason that the accused had been brainwashed by a psychiatrist called in by the District Attorney.
The present record indicates that no promise of immunity was made by Assistant District Attorney Hammer, and the question resolves itself into whether voluntariness of the confession to Detective Pickett was drawn in question by the circumstance that appellant refused to give any statement to Pickett until he was told that he was wanted only as a witness. The undisputed fact is that he was a material witness to the homicide, although he did not see the fatal shot fired, and that he was never charged with participating in this murder. He was told by Pickett that 1 ‘ we are only going to use him as a witness.”
*261 Pickett evidently had no thought at the time of charges against him of being an accessory or of illegally possessing a pistol, and what he said about intending to use him as a witness was clearly spoken in good faith. In any event, what Pickett said contained no promise of immunity, express or implied. In stating that they intended to use him only as a witness, since ‘ ‘ we know that you could not be charged with the homicide ’ ’, Pickett was plainly stating the truth, nor did Pickett say anything to the effect that appellant would receive better treatment-in any respect if he made a statement. The purport of his remark was simply that he was interviewing appellant as a prospective witness in the prosecution of Falco for murdering Hunos.
Moreover there was nothing to show that any conceivable promise of immunity was authorized by Assistant District Attorney Hammer in charge of the investigation, who testified that he had not authorized the detective to make any stipulation of immunity.
Nothing in the decision by the United States Supreme Court in Malloy v. Hogan (378 U. S. 1), relied on by appellant, militates against these conclusions. Malloy had been convicted of contempt for refusing to answer questions addressed to him in an official inquiry to which he pleaded immunity under the Fifth Amendment to the Constitution of the United States. What was said at page 7 about the voluntariness of confessions referred to confessions secured by “ a whip ”. No whip was employed here, inasmuch as appellant was not led to believe that he would benefit or profit in any manner by making a statement. He was never charged with having participated in the killing of Munos, nor was he promised immunity expressly or by implication on the only charges on which he has been convicted of being an accessory after the fact and illegally possessing a pistol.
The judgment of conviction should be affirmed.