■ THE PEOPLE OF THE STATE OF NEW YORK; Respondent, v. RAYMOND SOLARI, Appellant.— Appeal from a judgment of the County Court of Broome County, rendered on October 10, 1972, upon a verdict convicting the defendant of the crime of murder. Defendant was convicted of the murder of Jed Layman, an alleged boyfriend of the defendant's estranged wife. He was originally apprehended by the police after the Broome County Sheriff's office received a phone call from a man who identified himself as "Solari" and said, "I'm the guy you're looking for" and agreed to wait for the police at a designated phone booth. After he was picked up at that booth, searched and handcuffed, he was taken in a police car to the Sheriff's department. During that ride, Sgt. Skinner of the Binghamton police gave defendant an admittedly incomplete recitation of his rights and no other conversation ensued. Upon reaching the Sheriff's department, defendant was taken to the criminal investigation office and his handcuffs were removed. He began to talk to the officers present and was told by Sgt. Skinner to remain silent until such time as he was informed of his rights. The sergeant proceeded to so warn him, reading from a *Miranda* warning report (see *Miranda* v. *Arizona*, 384 U. S. 436). When he had been fully informed of and stated that he understood all of his rights, he balked when asked, "do you want a lawyer at this time?". After first responding in the negative, he said that if Layman was dead, he would need an attorney, and, when the sergeant truthfully advised him that he did not know the victim's condition, decided that he would not talk at that time, as he was uncertain of what had happened to Layman. Sgt. Skinner then explained to him that he could not talk to the police until he decided whether or not he wanted a lawyer. Approximately five minutes later this entire procedure was repeated, after the defendant, on his own initiative, stated that he wanted to tell the officers what had happened. The only change in circum-

stance this time was that Sheriff Perhach, who knew that Layman had died, was present. When the defendant expressed reservations about talking because of his uncertainty about Layman's condition, the Sheriff said nothing. Defendant then decided to talk to the officers anyway, but stated that he would not sign anything or give a typewritten statement. Though Sgt. Skinner explained to him that anything he did say could be used against him, whether or not he signed any of the forms, he still proceeded to tell the officers what had happened. Shortly thereafter, he agreed to and did repeat his story in the presence of Mr. Powers, an Assistant District Attorney. After this second statement, Mr. Powers identified himself to the defendant as an Assistant District Attorney and advised him that Layman was dead. This news visibly upset the defendant and, when he was asked if he wished to talk with anyone, he indicated that he would like to talk with his father in New Jersey. A phone call was then placed to the elder Mr. Solari and defendant appeared relaxed and composed after speaking with his father. Mr. Powers then proceeded to advise defendant of his rights, using a fresh *Miranda* warning report, and, as before, defendant stated that he understood his rights. Mr. Powers typed up the report, filling in defendant's responses to the questions, and gave it to the defendant to review. Defendant then signed the report, which was witnessed by Mr. Powers and the Sheriff, and executed a written confession, which was similarly witnessed. It is here that a major factual controversy emerges. The typewritten response to question 8 on the *Miranda* report, "do you want a lawyer at this time?", is "yes", and defendant claimed, while testifying at his *Huntley* suppression hearing (see *People v. Huntley*, 15 N Y 2d 72), that, before the typewritten *Miranda* report was signed, he had expressly stated to both Sheriff Perhach and Mr. Powers his desire to see an attorney, but was put off by both of them. The Sheriff and Mr. Powers both denied under oath that defendant had ever requested an opportunity to see an attorney in their presence and contended that the affirmative response to question 8 was a typographical error. After the suppression hearing, conducted prior to defendant's trial, the court made the following findings: That both Sgt. Skinner and Assistant District Attorney Powers had properly advised defendant of his constitutional rights, in accordance with the decision of *Miranda* v. *Arizona* (*supra*), before any questioning occurred; that the defendant did not request an attorney during questioning or at any time prior to signing the confession; and that defendant's statements and admissions were made voluntarily and not under the influence of fear produced by threats, force, or coercion. Accordingly, the court ruled that, beyond a reasonable doubt, the defendant had voluntarily, intelligently and knowingly waived his constitutional rights, as required by *Miranda* v. *Arizona* (*supra*), and that, beyond a reasonable doubt, the written statement and oral admissions of the defendant were made voluntarily. The court, therefore, denied defense motions to suppress the oral admissions and written statement and also a motion to suppress the tape made of defendant's initial phone call to the Sheriff's department. At trial, the prosecution offered into evidence only the signed, written statement of the defendant. The defense raised the issue of voluntariness of the written statement for the consideration of the jury, and the court charged the jury to that effect. Also, the defense asserted the affirmative defense of "extreme emotional disturbance" pursuant to section 125.25 of the Penal Law (subd. 1, par. [a]). The jury returned a unanimous verdict, finding defendant guilty of the crime of murder, and he was sentenced by the court to an indeterminate term of imprisonment of a minimum of 20 years and a maximum of life. Three basic issues are raised on this appeal: Whether sufficient evidence exists to sustain the trial court's finding

at a pretrial suppression hearing that, beyond a reasonable doubt, defendant knowingly, intelligently and voluntarily waived his privilege against self incrimination and right of counsel before making a confession to the police; whether defendant's confession to the police was involuntary because, considering the totality of circumstances surrounding defendant's interrogation by police, defendant's confession was coerced; and whether the jury's verdict, in rejecting defendant's affirmative defense, should be reversed as contrary to the law and against the weight of the evidence. We find that sufficient evidence does exist to sustain the trial court's finding as to the defendant's waiver. It is clear that both Sgt. Skinner and Assistant District Attorney Powers, through their use of *Miranda* warning reports, fully apprised defendant of his constitutional rights as required by *Miranda* v. *Arizona* (*supra*). Also, though defendant made no express statement of waiver of his rights, such a statement is unnecessary where, as here, "the facts and surrounding circumstances clearly demonstrate that such a waiver was otherwise made" (*People* v. *Ruiz,* 34 A D 2d 908, 909). Furthermore, defendant's statement might be seen as volunteered and spontaneous, and thus admissible, even if *Miranda* warnings had not been given (*People* v. *Kaye,* 25 N Y 2d 139). As the court in that case said, it has not yet been held that the police "must take affirmative steps, by gag or otherwise, to prevent a talkative person in custody from making an incriminating statement" (*People* v. *Kaye, supra,* p. 145). Nor, considering the totality of the surrounding circumstances, was defendant's confession coerced and thus involuntary. The defense places great reliance on the fact that information as to Layman's death was withheld from the defendant, but this hardly renders the confession involuntary. Even in cases where actual deception has been made out, the resultant confession is not found to be involuntary (*People* v. *Pereira,* 26 N Y 2d 265). Defendant further refers to his level of intelligence and his state of intoxication at the time of his statements to police as factors which made him susceptible to psychological coercion. However, the facts of this case do not approach the standard of *People* v. *Schompert* (19 N Y 2d 300, cert. den. 389 U. S. 874) where the court held that self-induced intoxication renders a confession inadmissible only if the accused is intoxicated to the degree of mania or to the degree of being unable to understand the meaning of his statements. Finally, we find that the jury's verdict should not be reversed. It is true that the prosecution offered no expert medical testimony to rebut the testimony of defendant's experts that defendant was extremely emotionally disturbed at the time he killed Layman. However, this failure to produce any expert testimony did not preclude the jury from considering the issue of defendant's mental state as a question of fact (*People* v. *Thompson,* 35 A D 2d 686), and in this case, an examination of the record in its entirety reveals an abundance of evidence which would support a finding that the defendant acted with premeditation and deliberateness, and not in extreme emotional disturbance, when he killed Layman. Such being the case, the verdict is not "'clearly against the weight of evidence'" and does not appear to have been "'influenced by passion, prejudice, mistake or corruption'" (*People* v. *Wood,* 12 N Y 2d 69, 77). Accordingly, we will not disturb it. Judgment affirmed. Greenblott, J. P., Cooke, Sweeney, Main and Reynolds, JJ., concur.