THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SOLOMON DAVIS, Appellant.

Fourth Department, December 5, 1975

Peter L. Yellin (Andrew Fine of counsel), for appellant.

Jack B. Lazarus (Michael Nelson of counsel), for respondent.

MARSH, P.J. This is an appeal from a judgment of conviction of murder rendered after a jury trial, under the law prior to its revision of September 1, 1974, upon an indictment charging "murder, in violation of section 125.25, subdivision 1 of the Penal Law of the State of New York, committed as follows: The defendant on or about June 4, 1974 in the County of Monroe knowingly and intentionally caused the death of another person, to wit, Ellis Miller." In its instructions to the jury the court charged that to establish defendant's guilt of murder the People had the burden of proving beyond a reasonable doubt that defendant with intent to cause the decedent's death did actually cause the death of decedent. The court then charged manslaughter, first degree under subdivision 1 of section 125.20 of the Penal Law and following the manslaughter first degree charge charged down to manslaughter second degree as defined by subdivision 1 of section 125.15 of the Penal Law in recklessly causing the death of another.

While there are some variations in the testimony of the witnesses to the fatal stabbing, it fairly and reasonably could be found that Miller, the victim, had killed defendant's brother, that the subject of the killing came up at a chance meeting of the defendant and Miller at a tavern, that defendant became upset over certain remarks made by Miller and warned him not to joke about his brother, that Miller grabbed defendant and defendant fell to his knees as Miller stood over him and that defendant then stabbed Miller a number of times and ran away. In its instructions to the jury the court properly charged the use of justifiable force and no exception was taken to the charge and no request to charge was made.

The jury retired at 1:28 P.M. and at 4:14 P.M. defendant's counsel requested that the court charge under the manslaughter first degree statute the doctrine of extreme emotional disturbance as reducing the crime of murder to one of manslaughter, first degree, pointing out the descriptions of defendant's state of mind related in the testimony as being first one

of anger and then one of fear at the time of the incident. The court then charged that if the jury believed that the defendant acted under extreme emotional disturbance "or heat of passion as it was formerly called" and that there was a reasonable explanation for its existence at that time and place and under those circumstances, then they could not find the defendant guilty of murder although they could find him guilty of manslaughter first or some other charge. He further charged that extreme emotional disturbance is an affirmative defense and the burden of proving such defense by a preponderance of evidence rests upon the defendant. No exception was taken to the charge as given.

Manslaughter in the first degree as defined in subdivision 2 of section 125.20 of the Penal Law was never submitted to the jury.

The paramount question on this appeal is whether the New York murder statute, subdivision 1 of section 125.25 of the Penal Law, which makes the defense of extreme emotional disturbance an affirmative defense violates the due process clause of the Fourteenth Amendment. Prior to the 1965 revision of the Penal Law (L 1965, ch 1030, eff Sept. 1, 1967) it was provided by section 1044 that: "The killing of a human being, unless it is excusable or justifiable, is murder in the first degree, when committed: 1. From a deliberate and premeditated design to effect the death of the person killed, or of another". Section 1046 provided: "Such killing of a human being is murder in the second degree, when committed with a design to effect the death of the person killed, or of another, but without deliberation and premeditation."

The 1965 revision effective September 1, 1967 abolished the concept of premeditation and deliberation and provided for one general definition of murder:

"§ 125.25 Murder. A person is guilty of murder when:

"1. With intent to cause the death of another person, he causes the death of such person or of a third person; except that in any prosecution under this subdivision, it is an affirmative defense that:

"(a) The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. Nothing contained in this paragraph shall consti-

tute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime".

In the same revision the manslaughter first degree Penal Law section was revised to provide:

"Section 125.20 Manslaughter in the first degree. A person is guilty of manslaughter in the first degree when: * * *

"2. With intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as defined in paragraph (a) of subdivision one of section 125.25. The fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subdivision".

Section 25.00, Defenses; burden of proof, provides:

"1. When a 'defense,' other than an 'affirmative defense,' defined by statute is raised at a trial, the people have the burden of disproving such defense beyond a reasonable doubt.

"2. When a defense declared by statute to be an 'affirmative defense' is raised at a trial, the defendant has the burden of establishing such defense by a preponderance of the evidence."

Prior to the revision in 1967, in a homicide prosecution charging murder in the first or second degree if the defendant raised the issue of heat of passion by introducing some evidence tending to establish its existence, the duty then devolved upon the prosecution to negate the existence of heat of passion beyond a reasonable doubt (People v Sandgren, 302 NY 331).

In subdivision 1 of section 125.25 the definition of murder does not specify as an element the absence of extreme emotional disturbance and in subdivision 2 of section 125.20 in establishing the crime of manslaughter, it is provided that the prosecution need not prove the crime was committed under the influence of extreme emotional disturbance. The prosecution no longer is required to establish beyond a reasonable doubt the exclusionary element of the higher crime and to entitle a defendant to a charge down from murder to manslaughter first degree based upon extreme emotional disturbance defendant is required to establish its existence upon the

whole record by a preponderance of the evidence; that is to say, the defendant bears the risk of nonpersuasion. The Court of Appeals in an affirmance without opinion has approved of this interpretation of the emotional disturbance defense *(People v Solari,* 43 AD2d 610, affd 35 NY2d 876). However in *Solari* the constitutional question was not reached.

As of the present time the Appellate Divisions and Court of Appeals have not passed upon the constitutionality of shifting to defendant the burden of proof upon the defense of extreme emotional disturbance in a murder prosecution. The Court of Appeals has passed upon the placing of the burden of proof upon defendant in an entrapment defense *(People v Laietta,* 30 NY2d 68) and the affirmative defense of felony murder *(People v Bornholdt,* 33 NY2d 75). In both these cases the Court of Appeals upheld the placing of the specific burdens of proof upon a defendant against claims of unconstitutionality based upon due process. However, in both cases the court was dealing with a defense unknown to the common law which had been created solely for the benefit of the defendant. It did not constitute a shifting of the burden of proof on an issue that had once been an element of the crime and thus previously a part of the prosecution's case to establish guilt beyond a reasonable doubt. It cannot be said that the rationale of *People v Bornholdt* or *People v Laietta* would deny a constitutional due process challenge to the affirmative defense of extreme emotional disturbance.

The above case law development with respect to the constitutionality of placing the burden of affirmative defenses upon the defendant took on a new dimension with the Supreme Court decision in *Mullaney v Wilbur* (421 US 684). In *Mullaney* the defendant was charged with murder based upon evidence tending to establish that he stabbed another man in the latter's hotel room, and the defendant claimed that he attacked the deceased in a frenzy provoked by the deceased's homosexual advances. The Maine statute provides two types of homicide, murder and manslaughter. Murder is defined as the unlawful killing of another person with malice aforethought either express or implied, whereas manslaughter is the unlawful killing of another person in a heat of passion on sudden provocation without express or implied malice aforethought. The trial court in the Maine case instructed the jury that they must find the defendant guilty with malice aforethought before they could convict the defendant of murder but

that the jury could imply the existence of such malice afore-thought where the homicide was both intentional and unlawful. Hence, where the homicide was intentional and unlawful the duty devolved upon the defendant to establish by a fair preponderance of the evidence that the killing was done in the heat of passion upon sudden provocation.

The Supreme Court in *Mullaney* traced the history of the development of the distinction between murder and manslaughter from its early development in the 13th century when all killings, whether accidental or intentional, were punished by death unless done by the King's own ministers. During the course of development, the murder/manslaughter dichotomy was nurtured by the struggle between the King and the ecclesiastical courts, the King asserting jurisdiction in all cases where the homicide was committed with malice prepensed and the ecclesiastical courts asserting jurisdiction where such an element was absent providing the defendant was able to read. The homicides that were committed without such malice were defined by statute as manslaughter and still subject to the benefit of clergy. Following its historical exegesis the Supreme Court concluded (p 696): "This historical review establishes two important points. First, the fact at issue here—the presence or absence of the heat of passion on sudden provocation—has been, almost from the inception of the common law of homicide, the single most important factor in determining the degree of culpability attaching to an unlawful homicide. And, second, the clear trend has been toward requiring the prosecution to bear the ultimate burden of proving this fact."

The revisers of the Penal Law reasoned that it would be inequitable to require the prosecution to negate the existence of heat of passion beyond a reasonable doubt and that in most cases facts tending to establish the existence of emotional disturbance would be more readily apparent and available to the defendant (see Practice Commentaries by Arnold D. Hechtman, following section 25.00 of the Penal Law). The Supreme Court of the United States rejected this reason for shifting the burden to the defendant with respect to the heat of passion defense as without sufficient constitutional significance when weighed against the defendant's due process rights.

"It has been suggested * * * that because of the difficulties in negating an argument that the homicide was committed in

the heat of passion the burden of proving this fact should rest on the defendant. No doubt this is often a heavy burden for the prosecution to satisfy. The same may be said of the requirement of proof beyond a reasonable doubt of many controverted facts in a criminal trial. But this is the traditional burden which our system of criminal justice deems essential." *(Mullaney v Wilbur, supra,* p 701.)

The Supreme Court concluded (p 704): "We therefore hold that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case."

New York's present murder statute merely provides a proscription against the intent to kill another human being and the resultant death of the object of the intent under subdivision 1 of section 125.25. The practice commentary following section 125.20, manslaughter in the first degree, gives no reason for concluding that the heat of passion defense which was redefined as extreme emotional disturbance, contained a qualitatively different element from its historical antecedent. Certainly its intent was to broaden the old heat of passion category. It must be concluded that the heat of passion defense referred to in *Mullaney v Wilbur (supra)* is the present New York defense of extreme emotional disturbance.

The statutory provision of section 125.25 (subd 1, par [a]), which makes the claim that the killing was committed under the influence of extreme emotional disturbance an affirmative defense, with the burden of proof upon the defendant to establish the existence of extreme emotional disturbance by a preponderance of the evidence, must be held to be unconstitutional as a violation of the due process provision of the Fourteenth Amendment.

In the instant case defendant Solomon Davis committed the homicide, was tried and convicted prior to the decision in *Mullaney v Wilbur* which was decided June 9, 1975. However, in *Ivan v City of New York* (407 US 203) the Supreme Court gave full retroactive effect to *Matter of Winship* (397 US 358). The *Mullaney* case was based upon application of due process requirements with respect to the prosecutorial standard of reasonable doubt, which were held to apply retroactively in *Ivan* and there seems to be little reason to distinguish *Matter of Winship* and *Mullaney* with respect to retroactivity. We conclude that *Mullaney v Wilbur (supra)* applies to the trial of

the instant defendant notwithstanding it was decided subsequent to the termination of the trial.

A fair and reasonable view of the evidence in the case before us relating to defendant's mental state at the time of the killing required a charge by the court that to establish defendant's guilt of murder the People had the burden of proving that the defendant was not acting under the influence of extreme emotional disturbance as defined by section 125.25 (subd 1, par [a]) of the Penal Law, and as requested by defendant. Further, the court properly should have charged subdivision 2 of section 125.20 of the Penal Law.

Defendant assigns additional error in the court's refusal to charge criminally negligent homicide. Section 125.10 of the Penal Law, Criminally negligent homicide, provides: "A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person."

A person is guilty of criminally negligent homicide when he causes the death of another person by conduct, which while not intended to cause death resulted from his negligently failing to perceive the risk of death which might ensue from his conduct. Such acts are to be distinguished from situations where the actor perceives the risk but consciously disregards it (Penal Law, § 15.05, subd 3; *People v Stanfield,* 36 NY2d 467; see, also, *People v Strong,* 37 NY2d 568).

The Medical Examiner testified that he found five stab wounds, one in the chest, one in the left abdomen, one in the right flank, one in the left forehead and one in the left neck. The left chest wound perforated the heart and the aorta and resulted in decedent's death. The left abdomen wound penetrated the deceased's liver. The assault was perpetrated by defendant with a 7-inch dagger. It is not conceivable that defendant failed to perceive the risk of death when he plunged the 7-inch dagger into deceased five times, at least twice in vital areas. The evidence does not fit into the mold of criminally negligent homicide. The concept is repugnant to the operative facts surrounding this particular homicide (see *People v Wall,* 29 NY2d 863, affg 34 AD2d 215).

The defendant's last assertion of error concerns the court's refusal to allow his character witness Mary Williams to answer defense counsel's question, "Did you ever hear anything bad about the defendant." Defense counsel asked this question immediately following cross-examination of Mary Williams by the prosecutor. It is apparent from reading the

witness' direct character testimony that her testimony concerned defendant's reputation in his local community for peaceableness, a relevant and proper query in a homicide trial. The court was in error in ruling that a question concerning prior bad acts with respect to peaceableness was not permissible.

The judgment of conviction should be reversed and a new trial granted.

MOULE, CARDAMONE, GOLDMAN and WITMER, JJ., concur.

Judgment unanimously reversed on the law and a new trial granted.