Leon N. Armer, J.
Defendant Archie, charged with robbery, first degree, allegedly accomplished by "display of what appeared to be a sawed-off shotgun” (Penal Law, § 160.15, subd 4) moves to dismiss the charge as contrary to the constitutional principles pronounced by the United States Supreme Court in Matter of Winship (397 US 358) and Mullaney v Wilbur (421 US 684). Winship held that the due process clause *244 protected an accused against conviction except upon proof beyond a reasonable doubt. Mullaney struck down the burden imposed by Maine law upon a defendant charged with intentional homicide to prove manslaughter in that he killed in the heat of passion on sudden provocation by a fair preponderance of the evidence or face possible conviction of murder upon the conclusive presumption of implied malice aforethought. Defendant here claims that the statutory scheme forbidding robbery with "display * * * [of] what appears to be a [firearm]” (Penal Law, § 160.15, subd 4; Penal Law, § 160.10, subd 2, par [b]) denies him due process of law by:
(1) "[D]rawing a distinction between two crimes (robbery in the first degree [Penal Law, § 160.15, subd 4] and robbery in the second degree [Penal Law, § 160.10, subd 2, par (b)]) while failing to require the prosecution to '[Establish beyond a reasonable doubt the fact upon which [the distrinction (sic)] turns’, Mullaney [supra, p 698]” and
(2) "The statutory scheme creates a presumption which in operation and effect requires a defendant to disprove the degree of culpability.” (Defendant’s memorandum of law, pp 4-5, emphasis in original.)
The defense claims that the reasoning in People v Balogun (82 Misc 2d 907) and this court notes in similar vein People v Davis, 49 AD2d 437, decided December 5, 1975 and People v Woods, 84 Misc 2d 301, decided September 30, 1975, which void the New York State affirmative defense provision to reduce murder to manslaughter when heat of passion appears (Penal Law, § 125.25, subd 1, par [a]) must be extended to the robbery statutes under which this indictment was returned. The Court of Appeals has yet to speak on this subject, and it should be worthy of note although of little apparent moment that the Maine law found invalid imposed a two-pronged burden on a defendant, i.e., a burden of proof on the affirmative defense, plus a presumption of malice aforethought to overcome. No presumption was imposed on a defendant to a charge of homicide in New York.
The New York statutes called to question here are as follows:
"§ 160.15 Robbery in the First Degree
"A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: * * *
*245 "4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.”
"§ 160.10 Robbery in the Second Degree
"A person is guilty of robbery in the second degree when he forcibly steals property and when: * * *
"2. In the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: * * *
"(b) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm.”
"§ 25.00 Defenses; burden of proof * * *
"2. When a defense declared by statute to be an ‘affirmative defense’ is raised at a trial, the defendant has the burden of establishing such defense by a preponderance of the evidence.”
The Maine law found wanting in Mullaney (supra) was as: "stated succinctly: Absent justification or excuse, all intentional or criminally reckless killings are felonious homicides. Felonious homicide is punished as murder — i.e., by life imprisonment — unless the defendant proves by a fair preponderance of the evidence that it was committed in the heat of passion on sudden provocation, in which case it is punished as manslaughter * * * The issue is whether the Maine rule requiring the defendant to prove that he acted in the heat of passion on sudden provocation accords with due process.” (Mullaney, supra, pp 691-692.)
The court there found: "First, the fact at issue here — the presence or absence of the heat of passion on sudden provocation — has been, almost from the inception of the common law of homicide, the single most important factor in determining the degree of culpability attaching to an unlawful homicide. And, second, the clear trend has been toward requiring the prosecution to bear the ultimate burden of proving this fact.” (Mullaney, supra, p 696.)
*246 While the Supreme Court used the term "degree of culpability” in its decision, it appears obvious that it has been long recognized that there is a distinction in the "nature of culpability” between murder and manslaughter, and these offenses have been deemed to be genetically different. It was Maine’s attempt, although not necessarily New York’s (See Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 125.20, pp 391-393), to blend the two culpably differing offenses into one crime of "felonious homicide”, and to remove the burden from the prosecution of proving the element of the intent of the actor that has been found violative of due process. As was noted in the concurring opinion of Justice Rehnquist, it was Maine’s "redefinition of homicide” that "effected] an unconstitutional shift in the State’s traditional burden of proof.” (Mullaney, supra, p 706.)
No intent by the court in Mullaney (supra) to strike down all affirmative defenses appears. It was in fact noted by Justice Rehnquist: "I agree with the Court that In re Winship, 397 US 358 (1970), does require that the prosecution prove beyond a reasonable doubt every element which constitutes the crime charged against a defendant. I see no inconsistency between that holding and the holding of Leland v. Oregon, 343 US 790 (1952). In the latter case this Court held that there was no constitutional requirement that the State shoulder the burden of proving the sanity of the defendant.” (Mullaney, supra, p 705.) In Leland, the burden was approved even though it required the defendant to prove an insanity defense beyond a reasonable doubt.
An attack of the same nature of defendant herein directed to the New York entrapment affirmative defense (Penal Law, § 40.05) was made in People v Long (83 Misc 2d 14). In denying an application by defendant to strike down the affirmative burden of proof imposed upon one claiming entrapment, the court there noted: "The presence or absence of entrapment, however, in no way affects the prosecution’s duty to prove beyond a reasonable doubt every element of the crime charged * * * In fact, the jury does not reach the entrapment question, unless it finds the defendant guilty beyond a reasonable doubt of all the elements of the crime before them.” (People v Long, supra, pp 18-19.) The Supreme Court has, in fact, declined the opportunity to pass, upon the same question. (People v Laietta, 30 NY2d 68, cert den 407 US 923.) It has further so acted in declining to review New York’s *247 affirmative defense to felony murder. (Penal Law, § 125.25, subd 3; People v Bornholdt, 33 NY2d 75, cert den sub nom. Victory v New York, 416 US 905.)
As was noted in People v Davis (49 AD2d 437, 441), in commenting on People v Laietta (supra) and People v Bornholdt (supra): "[I]n both cases the court was dealing with a defense unknown to the common law which had been created solely for the benefit of the defendant. It did not constitute a shifting of the burden of proof on an issue that had once been an element of the crime and thus previously a part of the prosecution’s case to establish guilt beyond a reasonable doubt.”
To speak first to the presumption claimed by defendant to operate against him herein: in fact no such presumption exists. It is true that the Governor’s memorandum approving chapter 1012 of the Laws of 1969 enacting the robbery statutes set forth above did use language as follows: "Specifically, the bill provides that a firearm displayed during the commission of a burglary or a robbery is presumed to be loaded” (NY Legis Ann, 1969, p 567). This message used the term "presumption” in an unfortunate and erroneous manner. As was noted in People v Player (80 Misc 2d 177, 180): "Proceeding upon their presumption that a weapon displayed under such circumstances is loaded, the Legislature decreed” (emphasis supplied). No presumption as such was cast into the judicial process to assist the prosecution in establishing the act forbidden, i.e., "display of what appears to be a [firearm].” (cf. People v Felder, 39 AD2d 373, 376.)
Thus contrary to the Maine law in Mullaney (supra), the defendant here has no presumption to overcome in establishing the affirmative defense. In enacting the statutory scheme of chapter 1012 of the Laws of 1969, the Legislature did no more than formalize certain facts of life as related to armed robbery long judicially recognized. (See, e.g., United States v Marshall, 427 F2d 434; Baker v United States, 412 F2d 1069, cert den 396 US 1018.)
Nor does Mullaney (supra) encompass the further claim of defendant, that the prosecution must establish the facts which distinguish between the degrees of robbery "by display * * * [of] what appears to be a [firearm].” While manslaughter and murder were genetically different offenses at common law, as focused upon in Mullaney (supra), no such dichotomy there existed between differing forms of robbery. Those were, of *248 course, days of simpler weapons and modest firepower. Precise definitions of the offense differ among jurisdictions, but New York’s use of the term "forcible stealing” (Penal Law, § 160.00) in defining robbery differs little semantically and none in application from the generally accepted definition of robbery as "larceny from the person by violence or intimidation.” (Perkins, Criminal Law [2d ed], p 279.)
Prior to the enactment of the Penal Law of 1965, robbery in the first degree, the highest degree of robbery in New York, was defined in this State as, inter alia, forcible stealing when "being armed with a dangerous weapon.” (Penal Law of 1909, § 2124, subd 1.) An unloaded weapon was a "dangerous weapon” under that statute (People v Roden, 21 NY2d 810; People ex rel. Griffin v Hunt, 267 NY 597), and it was no defense that the weapon used was in fact unloaded. The rationale for such approach was grounded on the fact that the "gist of the offense [of robbery] is a crime against the person.” (United States v Mann, 119 F Supp 406, 407.) Thus, the aggravating factors establishing the punitive degree of the offense focused upon the nature of force used against the victim or the gravity of the threat confronting the victim. The law so recognized that it was of little comfort to the person against whom the crime was committed that, unknown to him, the weapon in his face might have been in fact unloaded. This posture of the penal sanctions imposed was not out of accord with the conventional wisdom in this area. (See Ann., 79 ALR 2d 1412, §§ 2, 7, and cases collected therein; United States v Marshall, supra; Baker v United States, supra.)
With our revised Penal Law of 1965, the Legislature used the term "deadly weapon” rather than "dangerous weapon” as an element of robbery in the first degree. A "deadly weapon” was in effect defined in the revised law as a firearm that was loaded and operable or knives and certain other weapons. (Penal Law, § 10.00, subd 12.)
Perhaps the Legislature assumed in so doing that the courts would permit juries to infer deadliness from circumstances demonstrating the use of an apparently lethal weapon, under circumstances reflecting reliance upon its lethal qualities by persons committing robberies, without direct proof that the weapon contained bullets. Such an attitude had been deemed reasonable by other courts, to the extent of denial of certiorari by the Supreme Court. (Lewis v United States, 365 F2d 672, cert den 386 US 945; Wagner v United States, 264 F2d 524, *249 cert den 360 US 936.) If such was the case, however, it was not to be. The New York courts have declined to honor such an inference. (People v Fwilo, 47 AD2d 727; People v Iglesias, 40 AD2d 778; People v Dade, 15 AD2d 629; cf. People v Strong, 47 AD2d 798.)
Chapter 1012 of the Laws of 1969 appears to have been the response to such decisions, and this is further indicated by Arnold Hechtman (Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, § 160.15, pp 205-206):
"The change was designed to deal with a situation where a robber * * * displays what appears to be a firearm, but does not fire the weapon or is not immediately apprehended in possession of the weapon.
"Being 'armed with a deadly weapon’ is an element of robbery in the first degree (§ 160.15[2]) * * * This element will rarely, if ever, be established by the prosecution when the actor does not fire the weapon or the weapon is not immediately recovered. This is so because 'deadly weapon’ is defined as a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged’ (§ 10.00[12]). A victim can only testify that the defendant pointed something at him that looked like a gun and, unless the defendant fired it, cannot possibly testify whether or not it was loaded.
"The solution proposed by the 1969 bill was to add, as an element of first and second degree robbery * * * the display of 'what appears to be’ a gun. However, with respect to the first degree of [the] crime * * * the provision affords the defendant an opportunity to fight his way out of a first degree conviction if he can prove that the gun was either unloaded or incapable of being fired. It should be noted that even if the defendant successfully does so, he may still be convicted of the second degree crime * * * which requires only display of what appears to be a gun, but does not require that it be loaded or operable.” (Emphasis in original.)
Had the Legislature merely enacted as an element of robbery in the first degree: "displays what appears to be a [firearm]”, without providing an affirmative defense and the companion robbery second degree statute, such would have been consistent with the holdings of People v Roden (supra), People ex rel. Griffin v Hunt (supra), and Wagner v United States (supra), and this defendant could not have complained thereof. However, in an apparent gesture of solicitude toward *250 those stalwart enough to rob with toy, imitation or empty guns, the Legislature enacted the statutory scheme claimed wanting herein. In so doing, no attempt was made to compress into the organic law of robbery some factor patently alien thereto, as was done in Maine law dealing with murder by forcing a defendant to prove that presumable murder was in fact not so. Again, paraphrasing Justice Rehnquist’s observation in Mullaney (supra, p 706) on Leland v Oregon (supra), the existence or nonexistence of bullets in a firearm bears no necessary relationship to the required elements of the crime of robbery. Further, the statutes defining the degrees of robbery in New York have not defined all robberies as a single offense, and then required all defendants to disprove the elements of aggravation. Such prospective attempts by States to do so were foreclosed in Mullaney (supra, p 699, n 24). Indeed, if robbery in the first degree is charged as being committed with a deadly weapon such as a knife, and the defense claims the weapon to be only a rubber and harmless knife, the defendant has no burden of proof on such claim, and the prosecution must show beyond a reasonable doubt that a knife was in fact used. It is only in those cases in which the true quality of the weapon, apparently lethal from afar and readily inferable as deadly from the manner of its use, can be known as a fact to have been harmless only to the user in most cases, that an accused has been given the privilege, a benefit "unknown to the common law” (People v Davis, 49 AD2d 437, 441, supra), of proving such fact in mitigation of his crime.
At first blush, this procedure of course has a hollow ring when measured against the following language in Mullaney, if taken from context:
"Maine has chosen to distinguish those who kill in the heat of passion from those who kill in the absence of this factor. Because the former are less 'blameworth[y]’, State v. Lafferty, 309 A. 2d at 671, 673 (concurring opinion), they are subject to substantially less severe penalties. By drawing this distinction, while refusing to require the prosecution to establish beyond a reasonable doubt the fact upon which it turns, Maine denigrates the interests found critical in Winship * * *
"[A] State could undermine many of the interests that decision sought to protect without effecting any substantive change in its law. It would only be necessary to redefine the elements that constitute different crimes, characterizing them *251 as factors that bear solely on the extent of punishment.” (Mullaney, supra, p 698.)
On analysis, however, no such general "redefinition” has been made of the law of robbery in New York, nor has the prosecution been relieved of any of its burden of proof. The statutory scheme goes no further than to permit the isolation, after guilt has been demonstrated beyond reasonable doubt on proof unaided by presumption, of those defendants claiming inability to complete the assault threatened in robbery by reason of facts which usually will be known only to themselves. The "reductive factor” does not extend to proving or disproving any element of the crime, or indeed any fact relevant to proof or disproof of any element, a situation not necessarily true even in an affirmative defense of insanity as noted in Mullaney (supra) relative to Leland v Oregon (supra). It is not therefore unreasonable or unconstitutional for one who seeks to escape the additional punishment sought by the State for those who rob by threat with real and loaded deadly firearms to "bear the laboring oar on such an issue.” (Mullaney, supra, p 706.) Such burdens have been imposed before without deprivation of due process where, as here, there exists a "manifest disparity in convenience of proof and opportunity for knowledge.” (Morrison v California, 291 US 82, 91; see, also, People v Bornholdt, supra, p 84; People v Laietta, supra, P 75.)
The defendant’s motion to dismiss is denied in all respects.