THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. SOL KOHN and JOHN WRIEDE, Appellants.

376

(Submitted May 29, 1929; decided July 11, 1929.)

*Emil M. Haas* for appellant. An inference of innocence could have been drawn from the evidence as consistently as one of guilt, and by reason thereof the People failed to establish the case against the defendants herein. (*People* v. *Gluck*, 188 N. Y. 167; *People* v. *Connelly*, 189 App. Div. 82; *People* v. *Bennett*, 49 N. Y. 137; *People* v. *Mantin*, 172 N. Y. Supp. 371; *People* v. *Ledwon*, 153 N. Y. 10.) The court's charge was erroneous. (*People* v. *Flack*, 125 N. Y. 324; *McKenna* v. *People*, 81 N. Y. 360; *People* v. *Baker*, 96 N. Y. 340; *People* v. *Ohanian*, 245 N. Y. 227; *People* v. *Barone*, 161 N. Y. 451.)

*Joab H. Banton*, District Attorney (*Archibald Firestone* of counsel), for respondent. The evidence as adduced at the trial was, by its very nature, circumstantial and those circumstances were indicative of a criminal intent upon the part of the defendants, if the jury saw fit to so find. (*People* v. *Bennett*, 49 N. Y. 137; *People* v. *Poulin*, 207 N. Y. 73; *People* v. *Atlas*, 183 App. Div. 593; 230 N. Y. 629; *People* v. *Rodawald*, 177 N. Y. 408; *People* v. *Long*, 150 App. Div. 500; *People* v. *Seidenshner*,

210 N. Y. 341; *People* v. *Katz*, 154 App. Div. 44; 209 N. Y. 327; *People* v. *McCarthy*, 250 N. Y. 358.) There was no error in the court's charge. (*People* v. *Fisher*, 136 App. Div. 57; *Winne* v. *McDonald*, 39 N. Y. 233; *People* v. *Fanning*, 131 N. Y. 659; *People* v. *Fanshawe*, 65 Hun, 77; *People* v. *Poulin*, 207 N. Y. 73; *People* v. *Johnson*, 185 N. Y. 219; *People* v. *Koenig*, 180 N. Y. 155; *People* v. *Taylor*, 138 N. Y. 410; *People* v. *Dimmick*, 107 N. Y. 13; *People* v. *McCullom*, 103 N. Y. 587.)

KELLOGG, J. The attempted burglary, of which the defendants have been found guilty, involved an effort to enter a flat in a tenement house, numbered 270 East Tenth street, New York city, which was occupied by a family named Shipkowski. The flat was on the fourth or top floor of the tenement building, and contained four rooms. At one end was the kitchen; at the other was the parlor or sitting room; between were two bedrooms. The apartment was customarily entered from a hallway by means of two doors, one into the kitchen, and one into the parlor. One of the bedrooms was equipped with a window, containing glass panes, which opened inwards from the hallway, like a door on a hinge. The testimony showed that Beatrice Shipkowski, a high school girl, on a certain morning, was doing housework in the kitchen, with the kitchen door locked. There came a rap on the door which was repeated several times. Beatrice, giving no answer, stepped into the bedroom furnished with a window. The window was swung inwards to leave an opening about seven inches wide. Beatrice, looking through the opening, observed a man standing at the kitchen door with a newspaper or newspaper parcel under his arm. Receiving no response to his rapping, the man walked down the hallway to the parlor door, and again knocked several times. He then passed up the hall stairway and lifted up the door giving upon the roof. In a few moments he came back; pushed in the bedroom

window slightly; passed to the kitchen door, knocked and tried to open the door. He then returned to the parlor door and stood there. Beatrice said that he was " tinkering " at the door, but afterwards admitted that his back was toward her so that she could not see what he was doing. Beatrice called out through a window for her landlady, and a neighbor came. The neighbor saw a man, whom he identified as the defendant Sol Kohn, step out from the entrance of the tenement, 270 East Tenth street. As he came out he beckoned to a man standing in the entrance to the adjoining building, No. 272. This man, identified as the defendant John Wriede, waved in reply and stepped down to the walk to join Kohn. As the two walked away they were arrested by a policeman to whom the neighbor had called. The defendant Kohn told the policeman that he had been looking for " a friend chauffeur." Wriede said nothing. The two were returned to the Shipkowski apartment where Beatrice identified the defendant Sol Kohn as the man who had knocked on the doors. The neighbor noticed fresh marks on the parlor door. Beatrice and the policeman saw none. The defendants were then taken to the police station. On the way Sol Kohn was seen to deposit his newspaper, or newspaper bundle, upon a truck standing at the curb. This was substantially the entire proof given by the People. No proof was offered by the defendants.

As to the defendant John Wriede, we think that the proof gave rise to a bare suspicion that he was engaged with the defendant Sol Kohn in an attempt to commit the crime of burglary. Surely, the mere wave of a hand by a felon, who is leaving the scene of his crime, and a return wave by the person saluted, can have no force to establish that the two have been confederates in the offense committed. We are clear that the evidence was wholly lacking to establish the guilt of the defendant John Wriede. As to the defendant Sol Kohn, we think that the evidence justified the drawing of an inference of

guilt. It is true that the repeated door rappings were not wholly inconsistent with innocence. Agents, seeking to write life insurance, or to make sales of household necessaries, frequently exhibit an equal persistence in their efforts to gain entrance to a home. Nevertheless, in the absence of proof that Kohn was pursuing an innocent quest, it was a fair inference that his purposes were sinister and criminal. It lay with the jury, and not with the judge, however, to draw the inference. The trial judge instructed the jury that "the inference is irresistible that the person who was there wanted to steal;" that "there is no other explanation and under the circumstances of this case that is the only inference that can be drawn from that evidence;" that "no logical man could find any other reason except that of guilt of the person who tried those doors;" that "it is your duty, in the absence of any explanation, to find that the man intended to commit a crime there, to steal or to do something else, that is all." When a trial judge thus instructs a jury, his accompanying remarks that the question of guilt or innocence is for them to decide are wholly fatuous. It is idle to say that a jury, instructed that the inference of guilt is "irresistible," that it is their duty to find that the defendant "intended to commit a crime," that "no logical man" could find a verdict other than that of guilt, is permitted to exercise an independent choice between the two alternatives of guilt and innocence. Certainly a jury, which *must* find a verdict of guilt, in obedience to instructions, is not a judge of the fact, despite all wordy assurances to the contrary voiced by the trial judge. We think that the instructions involved serious error, and that the judgment of conviction must be reversed.

The judgment of the Appellate Division and that of the trial court should be reversed and a new trial ordered.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN and O'BRIEN, JJ., concur; HUBBS, J., not sitting.

Judgments reversed, etc.