Scileppi, J.
The appellant has appealed pursuant to leave granted, upon reargument[1], by a Judge of this court from a judgment of the Appellate Division, Second Department, which affirmed a judgment of Supreme Court, Kings County, convicting appellant of assault in the second degree with intent to commit rape in the first degree.[2]
On April 23,1963 appellant was tried under a two-count indictment charging rape in the first degree and assault in the second degree with intent to commit rape in the first degree.
*492 Lois Peterson, the 20-year-old complaining witness, testified as follows. In 1962 while her mother was out of the country, she lived temporarily in the Manhattan apartment of her aunt, Mrs. Ruby Wilson. On May 26,1962 the complainant, the appellant (whom she testified she had met only once previously), appellant’s brother and her uncle all traveled to her uncle’s apartment in Brooklyn. Almost immediately upon their arrival, the uncle had to leave, thereby leaving complainant alone in the apartment with the appellant and his brother who had fallen asleep on a couch in the living room. The apartment contained a larger and a smaller bedroom. After her uncle had left the apartment, she went to the window in the larger bedroom and spoke to her uncle as he was getting into his car. While she was standing there the complainant testified that the appellant seized her from behind, cursed her, and threatened to kill her. Appellant then dragged her into the smaller bedroom, threw her on the bed and choked and slapped her at which point she blacked out. Upon regaining consciousness she was undressed from the waist down, her blouse was ripped and she was in the act of sexual intercourse with the appellant. At this point the doorbell rang and appellant desisted from the act and went to the window. The complainant jumped out of bed, ran to appellant’s brother, woke him up and stated that appellant had raped her. The brother, who died before trial, told her to put on her clothes. She did so, ran downstairs, buttoning her slacks and holding her sneakers in her hand.
When she opened the door at the bottom of the staircase, she saw her aunt (who had rung the doorbell) and immediately told her that she had been raped. The aunt .then summoned a policeman and after telling the policeman that she had been raped, she saw the appellant running from the house. The policeman gave chase and apprehended the appellant.
In an effort to establish the requisite corroboration (former Penal Law, § 2013) the People called the policeman who apprehended the appellant and complainant’s aunt.
Patrolman Broughton testified that after being summoned by the aunt the complainant told him that she had been raped. In describing her condition the officer testified that her hair was disheveled, her clothes were disarrayed, she was crying, had difficulty speaking and scratches and bruises appeared on *493 both sides of her throat. As to the appellant, the patrolman testified that after failing to obey his order to stop, he gave chase and finally apprehended the appellant. At the station house he informed appellant that the complainant charged him with rape to which appellant responded that ‘ ‘ he had sexual intercourse with the complainant, but that it was not against her will ’ ’. When the officer asked appellant if he knew that she was having her menstrual period the appellant answered “ No, but I found out.” The officer also testified that at the station house he observed blood stains on the appellant’s pants near the groin area which to his touch were damp.
The complainant’s aunt’s testimony as to the events on the day in question was substantially to the same effect as the testimony of her niece and the officer. She also confirmed the police officer’s description of the physical condition of both the complainant and the appellant.
The above testimony coupled with the medical testimony establishing that sexual intercourse had taken place was substantially the People’s case.
Upon the indictment charging rape in the first degree and assault in the second degree with intent to commit rape, the jury acquitted the appellant on the rape count and found him guilty on the assault count. Although the Judge did charge that appellant could not be found guilty of rape without the requisite corroboration, no similar charge was given as to the second count charging assault with intent to commit rape. It is important to note, however, that defense counsel took no exception to the charge on corroboration and did not request a similar charge on the assault count.
In People v. English (16 N Y 2d 719) we held that corroboration of assault with intent to commit rape is required when testimony as to an actual rape has been received.
It is evident from our holding in English that if this was a post -English case and a proper exception taken or request to charge had been made, then there would be no alternative but to reverse and dismiss the indictment or reverse and grant a new trial depending upon whether or not we could say, as a matter of law, that the requisite corroboration did not exist (People v. Colon, 16 N Y 2d 988).
*494 The trial in the instant case, however, and the appeal in the Appellate Division and the original denial of the application made pursuant to section 520 (Code Crim. Pro.) all took place prior to our determination in English. Therefore, the primary questions to be considered on the applicability of English are (1) retroactivity and (2) notwithstanding the fact that English had not been decided at the time of the trial, whether the question has been preserved for our review in the absence of an exception or a request to charge.
As a general rule we decide cases according to the law as it exists on the date of our decision (Fruhling v. Amalgamated Housing Corp., 9 N Y 2d 541; Strauss v. University of State of N. Y., 2 N Y 2d 464). While it is true that recently the Supreme Court has extended the traditional notions of retroactivity so that even those defendants who have exhausted the normal appellate process will have redress if they have fallen victim to constitutional deprivations going to ‘ ‘ the very integrity of the fact-finding process ”, (Linkletter v. Walker, 381 U. S. 618, 639; see Jackson v. Denno, 378 U. S. 368; Gideon v. Wainwright, 372 U. S. 335) this rationale should not be applied to English for it involved no constitutional deprivation at all. We reversed the conviction in English, not because of any constitutional right to have the testimony of the female complainant corroborated, but rather, as a matter of policy in order to prevent the prosecutor from settling for the lesser conviction simply because of his inability to obtain the requisite corroboration for the consummated rape. It is, therefore, our opinion that the appellant is entitled to no greater retroactive application of English than the general rule would allow.
People v. English (supra) having been decided on July 9, 1905 and appellant’s section 520 application from the judgment of conviction having been denied prior to that time (June 24, 1965), appellant is not entitled to the benefit of English for at the time of our decision in the normal appellate process, English was not the law. The fact that the appeal from the judgment of conviction is presently before us by way of granting leave on reargument of the section 520 application is of no import. As was stated in People v. Muller, (11 N Y 2d 154, 156): “ [The instant case] had been finally laid to rest by denial of defendant’s first application for leave to appeal * * * timely *495 taken within the 30 days prescribed by statute (Code Crim. Pro. § 521). By denial of that application it was decided that the case presented no question of law for our review; the appellate process was as effectively terminated by that denial as it would have been had leave been granted and we had affirmed the conviction— as we would have had to do under the law then in effect.”
Even assuming, however, the applicability of English, the appellant’s failure to take an exception or make a request to charge precludes review of the question (Code of Crim. Pro., § 420-a; People v. Adams, 21 N Y 2d 397, 403; People v. Feld, 305 17. Y. 322, 332). Appellant argues, however, that at the time of the trial in the instant case English had not been decided and, therefore, appellant should not be penalized for his failure to anticipate the shape of things to come. This very argument was advanced and rejected in People v. Friola (11 N Y 2d 157) where we refused to consider an alleged Mapp (Mapp v. Ohio, 367 U. S. 643) error in the absence of a proper objection, notwithstanding the fact that the trial in Frióla took place prior to the decision in Mapp. In his concurring opinion in Frióla, Judge Yah Voobhis stated the rationale for our holding: “ Courts are continually reconsidering old precedents and, if no objection or equivalent was required here, objection would never be necessary to raise a question of law where it is urged that some former decisional law be changed. That would not accord with the purposes of the rule requiring an objection, which is to apprise the court and the adversary of the position being taken when the ruling is made. It is important to know at the time that rulings are being challenged so that additional evidence or argument may be presented and the point considered by the trial court with knowledge that the rule is being contested. ’ ’ (People v. Friola, 11 N Y 2d, at pp. 160-161. See, also, the most recent reaffirmation of People v. Friola in People v. Gates, 24 N Y 2d 666.)
Appellant’s statement that in People v. Colon (16 N Y 2d 988, supra) we applied English, notwithstanding a failure to request is erroneous. The record in Colon reveals that Colon’s trial counsel made a specific request to charge consistent with the principle later laid down in English.
*496 We have considered appellant’s other arguments and have found them to be without merit.
Accordingly, the judgment and the orders appealed from should be affirmed.

. Appellant’s application pursuant to section 520 of the Code of Criminal Procedure seeking leave to appeal from the judgment of conviction was denied by a Judge of this court on June 24, 1965. On March 27, 1969, however, the application was, upon reconsideration, granted.

. In addition to the above appeal from the judgment of conviction, appellant is also appealing, by permission, from two orders of the Appellate Division which affirmed orders of Supreme Court, Kings County, denying appellant coram nobis relief.