THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MARK BAKER, Appellant.

Second Department, March 25, 1974.

*Abraham H. Brodsky (Henry J. Boitel* of counsel), for appellant.

*Eugene Gold, District Attorney (Martin I. Saperstein* of counsel), for respondent.

*Per Curiam.* In this close case where the proof was such " as to give serious jurors pause " (*People* v. *Mendes,* 3 N Y 2d 120, 122), the conduct of the trial court deprived the defendant of a fair and impartial trial (*People* v. *Sostre,* 37 A D 2d 574).

The defendant's conviction was for the sale of barbiturates to undercover policemen on two occasions. The policeman who allegedly had personal contact with the defendant on the two sales had written in his notes that the defendant was about 5 feet, 8 inches tall—the same height as the policeman. In

testifying at the trial, the defendant gave his height as 5 feet, 11½ inches. In marshaling the evidence, the trial court made no mention of this discrepancy (see *People* v. *Jackson,* 39 A D 2d 557).

There was testimony by four policemen, including two who were parked in an automobile a block away, some 250 feet from the scene, that the sales took place near a drinking fountain on the east side of a building located in a park or playground which the defendant frequented. It turned out that all the policemen were mistaken and that the fountain was on the *south* side of the building. The testimony was significant not only because it showed that the policemen had thoroughly rehearsed their version of what happened — even to the extent that they all made the same error — but also because it cast considerable doubt on whether the police a block away could get a good view of the defendant. Yet, the trial court went to great lengths to tell the jury that the location of the fountain · was not important. In addition the court repeatedly admonished the jury " to keep your eye on the ball," a repetition verbatim of the phrase used by the prosecutor in his summation. That repetition, in the very language used by the prosecution, could only have led the jury to believe that the court was in accord with the prosecution's view of the defendant's guilt.

As above indicated, the defendant testified in his own behalf. He is a college graduate. He stated he had never possessed or sold barbiturates in his life, that he was not in the playground on the day the second sale allegedly took place and that he had no pills of any kind on his person when he was arrested. The arrest was made in the playground by one of the policemen who allegedly witnessed the sales from the automobile a block away. The officer asked the defendant whether his name was Mark and when the defendant replied in the affirmative he was arrested. The defendant attempted to show, and two defense witnesses corroborated this point, that there was another young man named Mark who frequented the park, who was involved in narcotics, who was approximately 5 feet, 8 inches tall and who actually was in the park on the day of the arrest. One of the officers testified that he had heard of the other Mark. However, the trial court all but told the jury not to consider this evidence.

In his brief, the defendant states that during the course of the trial the court asked 517 questions of the several witnesses, as contrasted with 599 asked by the prosecution. While not in itself determinative of bias by the court, that fact, when superimposed upon the other incidents occurring during the trial,

makes it manifest that the defendant did not have what he was entitled to — a fair trial.

The totality of the foregoing and the overactive participation of the court in the trial require that, as a matter of discretion in the interest of justice, the defendant be granted a new trial.

LATHAM, J. (dissenting). While this was in no sense a model trial, rarely do we find a case where proof of the defendant's guilt was so overwhelming. In my judgment this was not a close case. In broad daylight on two separate occasions the defendant, face to face, sold drugs to two undercover narcotics officers. They identified him positively; one of the officers had seen him before two or three times; and their identification was verified by a third officer who had observed the two transactions with binoculars.

The alleged difference in the height of the defendant was an unsubstantiated claim made at the trial and was not very significant. While the defendant said he was 5 feet, 11½ inches tall, his arrest record shows his height as merely 5 feet, 10 inches.

The error as to the location of the fountain was of slight importance and was later corrected. The important fact which was clearly proved was that the drug sales took place in the vicinity of the fountain. Whether the fountain was on the east or south side of the park house was not important. When, in an effort to cloud the real issue, the defense sought to magnify this minor issue, the prosecutor and the trial court were fully justified in telling the jury to "keep your eye on the ball" — to wit: did or did not the sales take place.

The defendant, an unemployed college graduate who apparently spent much of his time in the park, claimed an alibi with Herbert Posner, a friend with whom he went camping. Nevertheless, Posner did not testify and his absence was not explained in any satisfactory manner.

Other claims of error have little substance. Every avenue of defense was fully exploited by very able and experienced counsel and this court should not substitute its judgment for that of the jury which heard all the testimony and observed the witnesses.

MARTUSCELLO, Acting P. J., SHAPIRO and MUNDER, JJ., concur in Per Curiam opinion; LATHAM, J., dissents and votes to affirm, with an opinion, in which CHRIST, J., concurs.

Judgment of the Supreme Court, Kings County, rendered June 23, 1972, reversed, as a matter of discretion in the interest of justice, and new trial ordered.