THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PHILIP CONGILARO, SR., Appellant.

Fourth Department, December 16, 1977

444

## APPEARANCES OF COUNSEL

*Leslie Bradshaw* for appellant.

*Henry D. Blumberg* for respondent.

## OPINION OF THE COURT

MOULE, J. P.

Defendant appeals from a judgment of conviction entered upon a jury verdict which found him guilty of two counts of grand larceny in the third degree and one count each of rape in the first degree, grand larceny in the second degree, burglary in the third degree, criminal possession of a weapon in the third degree and custodial interference in the second degree.

On December 5, 1974 defendant was arrested by members of the New York State Police at an apartment in the Village of Ilion, Herkimer County. This arrest occurred following a series of events that took place on December 4, 1974 in which defendant allegedly raped his aunt, forcibly took her car keys and stole her car, took his son from his kindergarten class in violation of a court order of custody, broke into the mobile home of a friend and stole a loaded pistol from his home. After his arrest defendant was driven to the Ilion police station by Investigators Hierholzer and Paulin, where an oral statement was taken by Hierholzer in which defendant confessed to having engaged in the above-mentioned acts.

On January 10, 1975 the Herkimer County Grand Jury returned a seven-count indictment[1] against defendant, who was arraigned on January 22, 1975 and entered a plea of not guilty to all counts. Thereafter, defendant moved to suppress the oral statement made to the police after his arrest but following a hearing held on April 1, 1975, such motion was denied. The trial in this action commenced on May 13, 1975.

The evidence presented by the prosecution included the testimony of defendant's aunt, who related the facts surrounding her rape by the defendant and his theft of her car keys and automobile. There was medical testimony presented corroborating the fact that the aunt had not only been raped but also received bruises and lacerations during the rape. Additionally, defendant's neighbor testified concerning the aunt's complaint of the rape shortly after its occurrence. Furthermore, witnesses testified concerning the fact that defendant had taken his son from his kindergarten class in violation of a

---

1. Defendant was charged with the crimes of rape in the first degree, robbery in the third degree, grand larceny in the second degree, burglary in the third degree, grand larceny in the third degree, criminal possession of a weapon in the third degree and custodial interference in the first degree.

court order of custody and that he entered the mobile home of a friend from where he stole a pistol, which was later found in his possession upon his arrest. In addition to this eyewitness testimony, defendant's oral statement made subsequent to his arrest, in which he admitted having engaged in these acts, was read into the record by Investigator Hierholzer.

Defendant did not take the stand on his own behalf and no evidence was presented either contradicting the facts as presented in the People's case or challenging the substance of the oral confession. Rather, the defense of insanity was raised and presented through the testimony of defendant's mother and a court-appointed psychiatrist. Following rebuttal testimony by the prosecution's two psychiatrists, the case went to the jury, after which verdicts of guilty were returned.

Defendant's first contention on appeal is that the court erred in denying his motion to suppress an oral confession made to the police following his arrest.

The sole witness to testify at the suppression hearing was Investigator Hierholzer. He testified that defendant was arrested at approximately 11:00 A.M. on December 5, 1974 at an apartment in Ilion. During the five-minute car ride from the apartment to the Ilion police station, Hierholzer advised defendant that "he had the right to remain silent; anything he said could be used against him in a criminal action; he had the right to an attorney at any time; if he could not afford one, one would be appointed for him." Following this recitation of his rights defendant was asked if he understood them to which he replied that he did. Defendant was said to have appeared calm, collected and rational at the time.

Upon arrival at the police station defendant was taken to the chief's office where, by prior arrangement, he visited with his wife for 15 to 20 minutes. At about 11:30 A.M. Hierholzer told defendant that he wanted to take a written statement from him covering his activities for the past 24 hours. Defendant told Hierholzer that he would not give a written statement unless his attorney was present. Upon being asked who his attorney was, defendant answered, "Henry LaRaia." Hierholzer told defendant he did not think that La Raia could represent him because he was presently connected with the District Attorney's office but that he would call him on the phone. Defendant then said, "Never mind," and informed Hierholzer that he would wait for a court-appointed attorney. Defendant was then asked by Hierholzer if he would discuss

what he had been doing the past 24 hours and was warned again that whatever he said could be used against him. He said that he would not give a statement until an attorney was present but immediately thereafter volunteered to discuss his activities, prior to any questioning by Hierholzer.[2] Defendant then related to Hierholzer his actions during the past 24 hours, admitting to the rape of his aunt, the taking of her car keys and automobile, the removal of his son from school, the forced entry into his friend's trailer and the theft of the pistol.

Defendant first argues under this contention that his oral confession was involuntary in that the warnings given to him in the police car were inadequate. He asserts that they failed to apprise him that he had a right to have an attorney present during questioning and, furthermore, that he was entitled to stop talking at any time during the course of making a statement.

■ "Where * * * the defendant fails at the suppression hearing to challenge a narrow aspect of the sufficiency of the admonitions given him, at a time when the People would have an evidentiary opportunity to counter his assertion, he may not then be heard to complain on appeal" *(People v Tutt,* 38 NY2d 1011, 1013). At the hearing defendant advanced but a single ground for suppression of his oral confession; that being that once he requested to consult with an attorney, questioning should have ceased until an attorney was present and that any oral statement thereafter made in the absence of counsel was procured in violation of his Sixth Amendment right to counsel. At no time during the course of the suppression hearing did defense counsel either claim that any portions of the admonitions given defendant were deficient in their extent or explicitness or ask questions tending to probe the precise language used. Accordingly, defendant waived any right to raise this issue on appeal.

Nevertheless, we find it appropriate to address the merits of the issue raised. "[T]he words of *Miranda* do not constitute a ritualistic formula which must be repeated without variation

---

2. Hierholzer's testimony at trial varied slightly from his testimony at the suppression hearing. At trial Hierholzer testified that after defendant stated that he would wait for a court-appointed attorney, he asked defendant if he could discuss the matter "verbally" with him. At that point, defendant said he would talk to him verbally but that he would not give him a written statement until he had an opportunity to talk to a lawyer. Hierholzer then reminded defendant that anything he said orally could be used against him in a criminal action, after which defendant proceeded to give his statement.

in order to be effective. Words which convey the substance of the warning along with required information are sufficient" *(United States v Vanterpool,* 394 F2d 697, 698-699; see, also, *United States v Lamia,* 429 F2d 373, cert den 400 US 907; *People v Tutt, supra,* p 1013). In *Miranda v Arizona* (384 US 436, 471) the Supreme Court stated "that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation * * * As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation."

■ Here, the admonitions given defendant by Hierholzer included the right to remain silent and "the right to an attorney at any time while in custody." This latter warning was broad enough to apprise defendant of the fact that he had a right to consult a lawyer and to have the lawyer with him during interrogation. Furthermore, defendant stated that he would not give a written statement until his attorney was present, but when Hierholzer expressed a willingness to summon defendant's requested attorney, Henry La Raia, defendant told him it was not necessary. This action on defendant's part, in addition to the fact that defendant had had prior involvements with the law (see *People v Stanton,* 54 AD2d 527, 528), lends strong support to the conclusion that defendant was fully cognizant of his right to have an attorney present during any questioning if he so desired. Therefore, we find that the admonitions accorded defendant were in substantial compliance with those mandated by law and that, under the circumstances here, any inadequacy in those warnings did not result in a violation of defendant's constitutional rights.

Defendant raises as a second argument under this contention that in the absence of a waiver, interrogation by the police after his request for a court-appointed attorney rendered his oral confession involuntary and that the procurement of such confession was in violation of his Sixth Amendment right to counsel.

■ It is a well-established constitutional principle that if a defendant expresses a desire to speak with a lawyer, the police are prohibited from further interrogating him until he has been accorded that opportunity *(Miranda v Arizona, supra,* p 474; *People v Jackson,* 41 NY2d 146, 151; see *People v Gary,* 31 NY2d 68). "If the individual cannot obtain an attorney and

he indicates that he wants one before speaking to police, they must respect his decision to remain silent" *(Miranda v Arizona, supra,* p 474). Under circumstances where the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self incrimination and his right to retained or appointed counsel *(Miranda v Arizona, supra,* p 475; *Escobedo v Illinois,* 378 US 478, 490). Such waiver requires not merely comprehension but relinquishment *(Brewer v Williams,* 430 US 387, 404) and may be implied where the facts and circumstances clearly demonstrate that such waiver has been made *(People v Ruiz,* 34 AD2d 908, 909; see, also, *People v Solari,* 43 AD2d 610, affd 35 NY2d 876).

■ The uncontradicted testimony of Investigator Hierholzer at the suppression hearing shows that after defendant was given his *Miranda* rights and was approached about making a statement, he stated that he would not give a "written statement" unless his attorney was present. Hierholzer then asked defendant who his attorney was and upon defendant answering Henry La Raia, Hierholzer offered to call La Raia. Defendant, however, directed him not to do so and stated that he would wait for a court-appointed attorney instead. Thereafter, defendant was again asked if he would discuss his activities during the past 24 hours and was reminded that anything he said could be used against him. Defendant responded that he would not give a "statement" until an attorney was present. At trial, Hierholzer elaborated on his earlier testimony, asserting that defendant had specifically said he would talk to him "verbally" but that he would not give a "written statement" until an attorney was present. Defendant then voluntarily made an oral statement to Hierholzer relating his activities during the preceding 24 hours.

■ Under the circumstances defendant's oral statement should have been suppressed and the court erred in receiving it in evidence. However, the proof of defendant's guilt aside from the admitted confession is overwhelming. In addition to the eyewitness testimony of the People's witnesses, the defense psychiatrist testified that defendant had related to him that he had had sexual intercourse with his aunt, stolen her car keys and automobile, took his son from his class at school, broke into his friend's trailer and took a pistol from inside that trailer. The psychiatrist testified to these admissions by

defendant in the course of setting forth his opinion as to defendant's mental state at the time he engaged in such acts. Inasmuch as defendant never placed in dispute his commission of the above-mentioned acts but rather the sole question for the jury concerned his mental state at that time, there is no reasonable possibility that the court's error might have contributed to defendant's conviction and such error is thus harmless beyond a reasonable doubt (*Chapman v California,* 386 US 18; *Fahy v Connecticut,* 375 US 85; *People v Crimmins,* 36 NY2d 230, 237).

Defendant further contends that the court's denial of defense counsel's request for a one-week adjournment in order to prepare his insanity defense deprived him of a fair trial.

On February 11, 1975 defense counsel served upon the People and filed with the court a notice of defense of mental disease or defect pursuant to CPL 250.10, setting forth his intention to rely on such defense at trial. Thereafter, on March 14, 1975 defendant moved the court for appointment of a psychiatrist to aid in preparing his insanity defense. At a hearing held on March 27, 1975 the court, although asserting that defendant's motion for the appointment of a psychiatrist was untimely (CPL 255.20), nevertheless, entertained the motion in the interest of justice. In support of his motion, defendant alleged that he had a history of psychiatric care both in the armed forces and in civilian life; that immediately prior to his arrest on December 5, 1974 he had been undergoing psychiatric evaluation at the Marcy State Hospital;[3] and that he was unable to afford the cost of retaining his own doctor. Following a hearing on April 15, 1975 the court signed an order appointing defendant a psychiatrist.

On that same day, April 15, defense counsel contacted a psychiatrist, who said that he planned to be on vacation and would not be available to examine defendant until May 9 and 10, on which days such examination did take place. Thereafter, prior to jury selection on May 12, 1975, defense counsel announced to the court that he was unprepared to proceed to trial and that, although the psychiatrist had given him an

---

3. Defendant had been ordered to undergo observation at the Marcy State Hospital by a Family Court Judge prior to his arrest on the instant charges. Furthermore, it appears that defendant had been confined to the hospital for a 30-day evaluation period and had been released on December 3, 1974. Defense counsel stated that he had read a report prepared by doctors at the hospital and had relied upon such report in formulating his decision to raise the insanity defense.

oral preliminary diagnosis that defendant was insane at the time he committed the acts in question, his written report would not be available for one or two days. Additionally, defense counsel stated that he wished to subpoena certain records from the Marcy State Hospital and that the prosecution's psychiatrists had not yet examined defendant and prepared a report pursuant to such examination. Although counsel stated that he did not wish to see the case held until the next term, which was scheduled for October, 1975, he did request a one-week adjournment in order to await receipt of both the prosecution and defense psychiatric reports.

The court denied defendant's motion stating that defense counsel had been guilty of unnecessary delay in preparing the insanity defense. The court further stated that defendant would not be prejudiced by the commencement of jury selection in that counsel would not be permitted to inquire of the prospective jurors as to their opinions of an insanity defense and that counsel would have sufficient time to prepare properly the insanity defense during the People's case.[4]

It is well settled that the granting or denial of any adjournment by a Trial Judge is a matter of discretion (People v Singleton, 41 NY2d 402; People v Foy, 32 NY2d 473). Recent decisions reflect a more liberal policy in favor of granting a short adjournment when the delay is requested "in order to insure a fundamental right" (People v Foy, supra, p 477). In this regard, it has been held that adjournments should have been granted where the defendant sought to obtain transcripts of a preliminary hearing (People v Matz, 23 NY2d 196) or a pretrial suppression proceeding (People v Sanders, 31 NY2d 463) and where the adjournment was sought for the purpose of obtaining a material witness where the witness had been identified to the court, could be found within the jurisdiction and the movant demonstrated some diligence and good faith (People v Foy, supra, p 478). Those situations, as here, concerned the right of the defendant to prepare his defense adequately.

Under the facts here, we do not find that the court abused its discretion in denying defendant's motion for a one-week adjournment. Defense counsel served notice of his intent

4. The record shows that defense counsel received the Marcy State Hospital report just prior to opening statements on May 19, 1975. The reports of both the prosecution and defense psychiatrists were exchanged in court on May 20, 1975, with the first defense witness testifying approximately one week later.

to raise the defense of insanity almost three months prior to the commencement of trial. Thereafter, he failed to move timely for the appointment of a psychiatrist, although such motion was subsequently granted in the interest of justice. Upon contacting this psychiatrist and learning that he would be unable to examine defendant until almost three weeks later, defense counsel failed either to inform the court of this fact or to seek to obtain the services of a different psychiatrist. Rather, counsel waited until the day of trial to inform the court of his dilemma and seek an adjournment. Clearly, defense counsel was guilty of unnecessary delay in preparing the insanity defense, and, furthermore, his actions were instrumental in bringing about his alleged necessity for an adjournment.

However, we do not base our decision here solely on the actions of defense counsel, for this would unfairly penalize defendant for the dilatory actions of his attorney. In this regard we find that the record shows no resulting prejudice to defendant due to the denial of his attorney's motion for an adjournment. Defense counsel had in his possession on May 20, 1975, almost one week prior to the presentation of the defense, both the written report of the doctors at the Marcy State Hospital and those of the defense and prosecution psychiatrists. Furthermore, prior to this time, defense counsel had read the Marcy State Hospital report, was present at defendant's examination by the two prosecution psychiatrists and had spoken with the defense psychiatrist concerning the latter's opinion that defendant was indeed insane at the time of his actions. Moreover, counsel had more than three months to obtain any lay witnesses that might have testified with respect to defendant's mental instability.[5] Most importantly, the defense psychiatrist testified that he had examined defendant a number of times and that he had read a copy of the Marcy State Hospital report and both of the prosecution psychiatric reports, all of which he utilized in formulating his opinion as to defendant's mental condition. Despite the time pressure of which defense counsel complains, the insanity defense through the testimony of his psychiatrist and defendant's mother was fully presented. Accordingly, we find that the denial of the motion for an adjournment was not an abuse

---

5. At the time of his motion for an adjournment counsel failed to identify to the court any material witness he was having difficulty obtaining.

of discretion and did not serve to prejudice defendant in the presentation of his insanity defense.

Defendant also asserts that prosecutorial misconduct deprived him of a fair trial. In particular, defendant refers to two situations in which the prosecutor elicited allegedly harmful hearsay testimony. The first related to defendant's neighbor's testimony concerning the fresh complaint of rape made to her by his aunt and the second pertained to the testimony of defendant's son's teacher who related a statement made to her by a student teacher concerning the reason defendant was taking his son out of class that day. In both these situations the court ordered that the answers be stricken and that the jury disregard them. Furthermore, defendant asserts that the prosecutor made faces during trial, exhaled very loudly and at one point made a common derisive remark, all of which served to deprive him of a fair trial.

While we note that these incidents were unfortunate, assuming that they all occurred, in light of the overwhelming proof of defendant's guilt and inasmuch as there was no significant probability that these errors might have contributed to defendant's conviction, we find such errors to be harmless (*People v Crimmins,* 36 NY2d 230, *supra;* see, also, *People v Portanova,* 56 AD2d 265, 274; *People v Ronson,* 54 AD2d 639).

Defendant next urges reversal based upon several alleged errors in the court's charge to the jury. Initially, he claims that that portion of the charge with respect to the People's burden of proof on the issue of defendant's insanity was misleading. We disagree.

■ The court correctly charged that each individual is presumed sane and that when any evidence appears tending to establish insanity, this presumption is rebutted and the People must assume the burden of establishing defendant's sanity beyond a resonable doubt (see *People v Silver,* 33 NY2d 475). Defendant's claim that the charge placed on him the burden to prove his insanity beyond a reasonable doubt results from his reading certain portions of the charge out of context. The charge was on the whole correct on this issue and reversal is not warranted (see *People v Fitzgerald,* 26 AD2d 712; see, also, *People v Johnson,* 185 NY 219, 232; *People v McCallam,* 103 NY 587).

■ Defendant secondly asserts that that portion of the charge pertaining to the necessary elements to be proven in

regard to the larceny counts was misleading. The court submitted to the jury two counts of grand larceny in the third degree in connection with defendant's alleged theft of his aunt's car keys and his friend's pistol and one count of grand larceny in the second degree pertaining to the theft of his aunt's automobile. Defendant claims that although the court properly instructed the jury on the first count of grand larceny in the third degree that the taking must be done with the intent to appropriate the article permanently (Penal Law, §§ 155.05, 155.00), it failed to so charge with respect to the remaining larceny counts.

Defendant neither objected to these omissions by the court nor requested any clarifying instruction on the charge. Accordingly, any error by the court in this regard has not been properly preserved for review *(People v Robinson,* 36 NY2d 224; *People v Reynolds,* 25 NY2d 489, 495; *People v Adams,* 21 NY2d 397, 403). Nevertheless, inasmuch as the court did direct the jury to consider the same elements it set forth in its initial larceny charge at the time it charged the subsequent larceny counts and, in light of the overwhelming proof of defendant's guilt, any error committed does not justify a reversal in the interests of justice (CPL 470.15, subd 6, par [a]).

As his third claim of error under this contention defendant asserts that the court's charge with respect to the voluntariness of his confession was erroneous. In particular, he alleges that the court's instruction as to the *Miranda* warnings to be given an individual upon his being taken into custody was improper in that it failed to state that any questioning must cease upon the suspect's request for a lawyer and that the suspect may stop talking at any time. Once again, defendant failed to request either a clarifying instruction or a specific charge he desired the court to consider and, furthermore, failed to except specifically enough to afford the court a fair opportunity to correct any omissions it might have made. Accordingly, defendant has failed to preserve this point on appeal *(People v Robinson, supra; People v Reynolds, supra).* We further find that the court's charge in reference to defendant's right to counsel was proper.

We have examined defendant's final assertion that the court's continual reference in its charge to evidence favorable to the prosecution deprived him of a fair trial and find it to be without merit. It is well settled that in order "[t]o help

the jury intelligently to reach a conclusion on the evidence the court should review the testimony but this should be done fairly and impartially and not in a manner to suggest what the jury's verdict should be" *(People v Intersimone,* 266 App Div 280, 281; see, also, *People v Kohn,* 251 NY 375; *People v Becker,* 210 NY 274; *People v Amoroso,* 38 AD2d 563). While arguably the court here should have been more careful to phrase summaries of the testimony of certain witnesses in the hypothetical, the charge, as a whole, neither exhibits fact-finding nor suggests the court's opinion on the merits of the case. Moreover, the court repeatedly reminded the jury that it was their recollection and evaluation of the testimony that controlled. Where, as here, defendant placed sole reliance at trial on the insanity defense and the balance and weight of the evidence were never in conflict except on that issue, a marshaling of the facts where undertaken necessarily appeared one-sided. Furthermore, inasmuch as defendant's proof did not place the commission of his acts in dispute, it is doubtful that the court's reference to the People's proof on these issues prejudiced him.

Defendant next contends that judicial interference and bias deprived him of a fair trial. Specifically, defendant refers to the court's excessive participation in the examination of witnesses, its tendency to aid and bolster the prosecution's case, its interjections exhibiting an impatience with defense counsel and defense witnesses and an unfavorable evidentiary ruling on the permissible scope of cross-examination of the rape victim by defense counsel.

Although it is well settled that a Trial Judge may and should take an active role in the examination of witnesses where such "questioning is necessary to elicit significant facts, to clarify or enlighten an issue or merely to facilitate the orderly and expeditious progress of the trial" *(People v Mendes,* 3 NY2d 120, 121), that prerogative must not be interpreted and utilized as a license to systematically and continuously pre-empt and displace counsel in the examination of witnesses or to indicate disbelief of the witnesses' testimony *(People v Robinson,* 53 AD2d 898, 899; *People v Matos,* 46 AD2d 903, 904; *People v Baker,* 44 AD2d 83). Convictions have been reversed under circumstances where the court's continuous intrusion during examination of witnesses, its denigration of defense counsel and its participation tending to bolster the prosecution's case, served to deny the

defendant a fair trial (see *People v Richards,* 48 AD2d 792, 793; *People v Vasquez,* 47 AD2d 864; *People v Sumpter,* 46 AD2d 779, 780; see, also, *People v McRae,* 54 AD2d 664). Here, while it is true that the Trial Judge was active in the case, it cannot be said that any action taken by him exceeded the bounds of propriety or impartiality (see *People v Singletary,* 54 AD2d 767). Moreover, where, as here, the proof of defendant's guilt is overwhelming and no sharp issue of credibility is presented *(People v Mendes, supra,* pp 121-133; *People v Singletary, supra),* any inappropriate comments that might have been made by the Trial Judge were not of such a nature so as to deprive defendant of a fair trial (see *People v Crimmins,* 36 NY2d 230, 238-240, *supra).* Similarly we find no merit to defendant's allegation that the Trial Judge's evidentiary rulings either exhibited bias on his part or served to deprive defendant of a fair trial.

Defendant's final contention is that the court erred in submitting to the jury the crime of grand larceny in the third degree as a lesser included offense of robbery in the third degree under the second count of the indictment.

The second count of the indictment charged defendant with the crime of robbery in the third degree (Penal Law, § 160.05), in that he forcibly stole car keys from his aunt. Upon defense motion, that count was dismissed at the close of the People's case on the ground that there was insufficient evidence to show that these keys were "forcibly" stolen. The court did not at that time reserve a right to submit any lesser included offense to the jury and it was not until after the close of the evidence that the court informed defense counsel of its intention to charge grand larceny in the third degree as a lesser included offense under this count of the indictment.

CPL 290.10 (subd 1) states: "At the conclusion of the people's case or at the conclusion of all the evidence, the court may * * * upon motion of the defendant, issue a 'trial order of dismissal,' dismissing any count of an indictment upon the ground that the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included offense." From the language of this section it is evident that a trial order of dismissal is a judicial act which effectively eliminates one or more counts of an indictment for want of trial evidence legally sufficient to support the charged crime *or any lesser included offense.* The statute does not contemplate the granting of a trial order dismissing a count of an

indictment when legally sufficient evidence exists to support a lesser included offense under that count. Such interpretation is supported by the language in CPL 300.30 (subd 1) and 300.40 (subd 2) which states that in a multiple count indictment containing consecutive counts, where an offense charged is not supported by legally sufficient trial evidence, the court must submit the greatest lesser included offense which is supported by legally sufficient evidence. Under the circumstances here, where the court evidently believed that there was legally sufficient evidence to support the lesser included offense of grand larceny in the third degree, the court should not have issued an order dismissing the greater count of robbery in the third degree at the close of the People's case.

██ Based upon the above interpretation of CPL 290.10 (subd 1), defense counsel would have been justified in relying upon the dismissal of the second count of the indictment as a pronouncement that he need not offer proof on the issue of the theft of the car keys. The procedure followed by the court here operated to impair not only defendant's right to notice of the charges against him but also his right to present proof in his own defense (see *Paterno v Lyons,* 334 US 314, 320; *Matter of Oliver,* 333 US 257, 273). Although the People's argument that the procedure here was not prejudicial on these facts is worthy of consideration, we cannot speculate that defendant either would not or could not have offered proof in defense of the lesser included charge of grand larceny in the third degree. Accordingly, defendant's conviction for the crime of grand larceny in the third degree under count two of the indictment should be reversed on the law and that count dismissed and the judgment in all other respects, is affirmed.

CARDAMONE, SIMONS and DILLON, JJ., concur.

Judgment unanimously modified in accordance with opinion by MOULE, J. P., and, as modified, affirmed.