OPINION OF THE COURT
Edward M. Horey, J.
On February 4, 1978, the defendant was operating a snowmobile on rural Rush Creek Road, in the Town of Rushford, Allegany County, New York. At approximately 2:35 in the afternoon he was stopped by one Allen Mills, an Environmental Conservation Officer, for a registration check. The defendant was unable to produce a registration for the snowmobile. He was also unable to produce proof of insurance for that vehicle.
When asked by the arresting officer to identify himself, the defendant gave the name of "Edward Smith”. Another individual, operating a snowmobile in the area, identified the defendant to Officer Mills to be one "Edward Cunningham”. Officer Mills immediately placed the defendant under arrest for the traffic infraction of operating an unregistered motor vehicle. Officer Mills then made a request by radio for data on the snowmobile.
Receiving information that the snowmobile was stolen, Officer Mills placed the defendant’s wrists in handcuffs behind the defendant’s back and put the defendant in the officer’s automobile.
Producing a yellow card, Officer Mills commenced to read the Miranda warnings printed thereon to the defendant. After advising the defendant only that he had the right to remain silent, the Miranda admonitions were interrupted by radio messages from and to nearby police officers. The radio messages concluded, Officer Mills then commenced to read the Miranda warnings again to the defendant. This time, however, he read from a printed white card the four warnings which appeared on the front of that card. Questions to be addressed to the defendant covering waiver of rights that appear on the back of the white card were not read. Neither was any advice concerning the waiver of right to remain silent or to the *621 presence of an attorney, or otherwise, put to the defendant. Immediately, Officer Mills commenced to interrogate the defendant. The interrogation continued to the point when Officer Mills asked the defendant why he had given the named Edward Smith. In response, the defendant stated it was because he thought the snowmobile was stolen.
At about this time a Sergeant McCole of the New York State Police arrived at the scene of the arrest. Officer Mills told Sergeant McCole that the snowmobile had been reported stolen and that the defendant had given a false identification. He also advised that the defendant was under arrest for an unregistered vehicle. Custody of the defendant was given to Sergeant McCole and he departed with the defendant in his vehicle. Officer Mills testified that he knew that the defendant was not being taken by Sergeant McCole for arraignment, but rather for interrogation at the auxiliary office of the State Police in the Village of Fillmore.
Sergeant McCole did not place the defendant under arrest for possession of stolen property, or for any crime or offense. Traveling only a short distance, Sergeant McCole met another State Police motor vehicle. This vehicle was being operated by Sergeant Mulryan. Because Sergeant McCole had other duties, he delivered custody of the defendant to Sergeant Mulryan after engaging in a conversation with Sergeant Mulryan out of the presence of the defendant.
Sergeant Mulryan testified that he did not place the defendant under arrest. He merely transported the defendant to the auxiliary office of the State Police in Fillmore where he held a conversation with an Investigator Schroeder of the State Police. This conversation was out of the presence of the defendant.
An interrogation of the defendant was conducted by Investigator Schroeder with Investigator Evans and Sergeant Mulryan present. This interrogation was preceded by careful advice on the part of Investigator Schroeder of all Miranda warnings. An oral and subsequent written statement by the defendant that he waived his constitutional rights in reference to remaining silent and the right to have an attorney present was made. During the interrogation by Investigator Schroeder, Officer Mills appeared at the police barracks. He spoke with Investigator Evans out of the presence of the defendant and remained present throughout a portion of the interrogation. This interrogation led to the signing of a written confession *622 that the defendant was guilty of the crime of possessing stolen property. It was Sergeant Mulryan’s testimony that the defendant had been placed in State Police custody in regard to possession of a stolen snowmobile and not on the charge of operating an unregistered vehicle.
The transport of the defendant from the place of arrest to the auxiliary office of the State Police took approximately one-half hour. The defendant signed a written confession at approximately 5:30 in the afternoon. It was then that Officer Mills presented the defendant with two traffic tickets, one charging operation of an unregistered motor vehicle and the other charging operation of a vehicle without insurance. The defendant was arraigned on an information charging the crime of criminal possession of stolen property in the second degree in violation of subdivision 1 of section 165.45 of the Penal Law.
The defendant has moved to have the oral admission made to Officer Mills, and the subsequent written confession made to Investigator Schroeder suppressed. An extended Huntley hearing was held before this court over portions of four successive days.
The first issue raised by the defendant relates to the delay attending his arraignment.
CPL 140.20 (subd 1) provides in relevant part as follows: "Upon arresting a person without a warrant, a police officer, after performing without unnecessary delay all recording, fingerprinting and other preliminary police duties required in the particular case, must except as otherwise provided in this section, without unnecessary delay bring the arrested person or cause him to be brought before a local criminal court and file therewith an appropriate accusatory instrument charging him with the offense or offenses in question.”
It is noted that the provisions of CPL 140.20 (subd 1) require that an officer making an arrest without a warrant must bring the arrestee before a local criminal court having jurisdiction "without unnecessary delay”.
There is only one qualification to the time provision contained in the statute. After arrest, the mandated arraignment without unnecessary delay may be suspended for such time as is necessary for the arresting officer to perform "all recording, fingerprinting and other preliminary police duties required in the particular case”.
*623 A judicial construction to the qualifying language stated in CPL 140.20 (subd 1) does not appear to have yet been made. Since it is material and relevant to the case at bar, this court now construes it. The construction made is that a delay to the earliest arraignment of a defendant as a consequence of recording information, or fingerprinting the defendant, or performing other preliminary police duties, to be authorized, must be based upon a requirement for those acts. The statutory language does not mean, as the District Attorney contends, that the matter of the earliest arraignment is properly left in every instance to the whim and caprice of the officer making an arrest without a warrant. On that predicate, any officious police officer would be free to fingerprint, photograph and otherwise treat every housewife with an overparked motor vehicle in the same manner as a suspected perpetrator of the most heinous felony. This court does not believe the Legislature intended any such result. "The courts have repeatedly condemned the practice of delaying arraignment of a person held by police after an arrest. We join in such condemnation. As Judge Lehman said in the Alex case [People v Alex, 265 NY 192, 195]: 'The law does not leave to the police discretion as to when a prisoner shall be arraigned.’ ” (People v Kelly, 8 AD2d 478, 481.)
Here, it is clear that the defendant was not arraigned "without unnecessary delay” upon the vehicle and traffic infractions for which he was initially arrested. In fact, the defendant was never arraigned upon those charges. Thus, it is necessary to determine whether the fingerprinting of the defendant and the shuttling of the defendant from police officer to police officer until his arrival at the State Police barracks with the resulting delay in an early arraignment was "required in [this] particular case”. (CPL 140.20, subd 1.)
CPL 160.10 outlines in detail the rights and duties of a police officer relative to fingerprinting a person placed under arrest. The provisions of that statute are properly reviewed to determine whether a basis exists for the exception to the otherwise obligatory early arraignment provided in CPL 140.20 (subd 1).
CPL 160.10 (subd 1) first provides for the situations in which a police officer must take or cause to be taken the fingerprints of a defendant. Subdivision 2 details provisions of when a police officer may take or cause to be taken fingerprints of a *624 person placed under arrest. Such permissive fingerprinting is authorized when the police officer:
"(a) Is unable to ascertain such person’s identity; or "(b) Reasonably suspects that the identification given by such person is not accurate; or "(c) Reasonably suspects that such person is being sought by law enforcement officials for the commission of some other offense.”
Here, the defendant first wrongfully identified himself to the arresting officer as one "Edward Smith”. An acquaintance of defendant shortly thereafter advised the arresting officer that the correct name of the defendant was "Edward Cunningham”. Upon making radio inquiry, the officer was advised that the snowmobile operated by the defendant was stolen. It would thus appear that each of the three grounds for permissive fingerprinting set forth in CPL 160.10 (subd 2) was applicable.
The court finds that under the facts of this case sufficient grounds did exist to delay the arraignment of the defendant for the purpose of causing him to be fingerprinted and information concerning him recorded. These acts are held to have been, in this particular case, "required” within the meaning of CPL 140.20 (subd 1).
Even if the delay in arraignment of the defendant had been improper and his detention thus illegal, that factor, however, would be only one of the factors to be considered upon the voluntariness of the defendant’s confession. "The delay [in arraignment] was properly considered by the hearing court as a relevant factor in assessing voluntariness, even though it is not dispositive of the issue”. (People v Carbonaro, 21 NY2d 271, 277 [1967].)
Even more recently (1976) the Court of Appeals stated: "Moreover illegality, if any, of a detention is only one of the factors to be considered on the issue of voluntariness (Brown v Illinois, 422 US 590).” (People v Johnson, 40 NY2d 882, 883.) It is the totality of circumstances that determines the voluntariness of a confession.
The court turns to the other factors urged by the defendant. The first relates to the contention of the defendant that an oral admission on his part that he knew that the snowmobile was stolen was improperly solicited by the arresting officer.
*625 This statement was made after the defendant was placed under arrest for the traffic infraction of operating an unregistered snowmobile. It was made after the defendant was handcuffed. It was made after the defendant was placed in the arresting officer’s automobile. Significantly, the statement was made by the defendant in response to a question of the arresting officer. "I asked him why he gave me the name of Edward Smith and he said it was because he thought the snowmobile was stolen”. (Testimony of Allan Mills, the arresting Environmental Conservation Officer, transcript of Huntley hearing, May 10, 1978.)
The quoted question to and response of the defendant, followed a series of earlier questions posed to the defendant by the arresting officer.
The interrogation of the defendant was made under the following bizarre circumstances. After arresting and handcuffing the defendant and placing him in his automobile, the arresting officer read to the defendant from a printed yellow card in his possession, the following single admonition: "You have the right to remain silent”. At this point, the additional Miranda warnings to the defendnt were interrupted by radio communications in which the arresting officer participated.
At the conclusion of the radio communications, the arresting officer again commenced anew to read the defendant "Miranda warnings”. This time the officer read from a smaller white printed card in his possession. No explanation was made for the substitution of the white card for the previously used yellow card. The admonition read the second time from the white card were four in number, viz.:
"1. You have the right to remain silent.
"2. Anything you say can and will be used against you in a court of law.
"3. You have the right to have a lawyer and to have him present while you are being questioned.
"4. If you cannot afford a lawyer one will be appointed to represent you before any questioning, if you wish one.”
Express printed provisions relating to a waiver of the right to remain silent and to the services of an attorney were contained on the back side of the white card. The arresting officer conceded that these provisions were not read to the defendant. No reason was offered in explanation of the failure of the officer to read these waiver provisions.
*626 The court is of the opinion that the applicable law, to the facts presented, is found in the decision of People v Congilaro (60 AD2d 442, 450). There it is stated: "Under circumstances where the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self incrimination and his right to retained or appointed counsel (Miranda v Arizona, supra, p 475; Escobedo v Illinois, 378 US 478, 490). Such waiver requires not merely comprehension but relinquishment (Brewer v Williams, 430 US 387, 404) and may be implied where the facts and circumstances clearly demonstrate that such waiver has been made (People v Ruiz, 34 AD2d 908, 909; see, also, People v Solari, 43 AD2d 610, affd 35 NY2d 876).” (Italics added.)
It is clear that the defendant was never asked and never stated that he waived his right to remain silent. Similarly, he was never asked and never stated that he waived his rights to the presence of an attorney. Clearly, there was no express relinquishment of these rights.
Viewing all of the attending circumstances, especially the following, to wit: (1) The fact that the inquiry was conducted after the defendant had been arrested and placed in custody; (2) The total absence of inquiry on the part of the arresting officer of whether the defendant understood the rights which had been read to him; (3) The equal absence of any remark on the part of the defendant that he comprehended the rights which had been read to him; (4) The immediacy of the interrogation of the defendant following directly and immediately at the conclusion of the recited warnings; (5) The absence of any proof of prior arrests or other circumstances which would indicate the defendant’s familiarity with waiver or assertion of constitutional rights; (6) The fact that the inquiry of the arresting officer related to the defendant’s involvement in crimes quite separate and apart form the traffic infraction for which the defendant was arrested, and (7) The fact that the oral admission of the defendant was not volunteered by him, but rather was solicited by pointed questions of the interrogating officer, leaves no adequate grounds on which a waiver of rights may be properly implied. (People v Congilaro, 60 AD2d 442, supra; Brewer v Williams, 430 US 387, supra; Miranda v Arizona, 384 US 436; Escobedo v Illinois, 378 US 478, supra; *627 cf. People v Ruiz, 34 AD2d 908, supra; People v Solari, 43 AD2d 610, supra; People v Parry, 52 AD2d 963.)
The remaining issue relates to a written confession of the defendant. This was obtained after the defendant had been transported to the auxiliary office of the State Police. The court finds that there is no question but that the required Miranda warnings were properly read to the defendant by the interrogating State Police. Neither is there any question but that the provisions referable to a waiver of constitutional rights were also read to the defendant. Finally, the court finds there is no question but that the defendant both orally and in writing waived his constitutional rights in reference to this second interrogation. If the proceedings referable to this written confession could be reviewed independent of all prior proceedings, it would clearly be admissible in evidence against the defendant. Unfortunately, under decided judicial precedent it may not be considered so separately and independently.
In issue is whether a written confession subsequently obtained with proper constitutional safeguards was so tainted with prior improper proceedings that it must be suppressed.
In addressing the problem, the Court of Appeals in People v Chappie (38 NY2d 112) reviewed the determinations made by the Supreme Court of the United States in Westover v United States (384 US 436) and its celebrated companion case of Miranda v Arizona (384 US 436, supra). The Court of Appeals there stated (p 115): "Warnings, to be effective under the combined holdings in Miranda and Westover, must precede the subjection of a defendant to questioning. Later is too late, unless there is such a definite, pronounced break in the interrogation that the defendant may be said to have returned, in effect, to the status of one who is not under the influence of questioning. (George, The Fruits of Miranda: Scope of the Exclusionary Rule, 39 U Col L Rev 478, 492-493; see United States ex rel. B. v Shelly, 430 F2d 215, 218; Harney v United States, 407 F2d 586; Evans v United States, 375 F2d 355; cf. Darwin v Connecticut, 391 US 346; Clewis v Texas, 386 US 707, 710; Matter of Michael G., 40 AD2d 520; United States v Knight, 395 F2d 971, cert den 395 US 930.)” Having determined that the initial questioning of the defendant by the arresting officer was not preceded by proper warnings and waiver of rights, the test now is whether there was such a definite break between the first and second interrogation that *628 it can be properly said that the defendant had returned to the status of one who was not under the influence of the earlier questioning.
On this court’s review of the facts, it reaches the conclusion that there was not such a sufficient break in the interrogation process.
The court finds that the sequence of events commencing with the arrest of the defendant for infractions of the Vehicle and Traffic Law, continued with the handcuffing of the defendant, the failure of the arresting officer to secure from the defendant a waiver of constitutional rights, the improper questioning of the defendant by the arresting officer which lead to the damaging oral admission by the defendant, followed, in turn, and immediately by a transfer of the defendant to one member of the State Police and by him, in turn, to another member of the State Police, and the ultimate interrogation by yet other members of the State Police at the auxiliary barracks, were all a continuing chain of events.
Arrested at 2:30 in the afternoon and arraigned at about 5:30 in the afternoon, not over three hours elapsed from the defendant’s initial arrest to his ultimate arraignment. It is particularly significant that less than one-half hour intervened between the interrogation of the defendant by the arresting officer and the subsequent interrogation by the State Police. In this brief period the defendant was constantly in the-custody of the police. He was handcuffed throughout. Although it is obvious, and, in fact, admitted by one member of the State Police that all events which transpired after the arresting officer first learned that the snowmobile was stolen were directed to an investigation of the defendant’s involvement in that theft, no one ever advised the defendant of that fact. Instead, he was left with the impression that his arrest, confinement and interrogation dealt with the traffic infractions with which he had been charged.
It is true that the facts here are not those of an original sham arrest (cf. People v Robinson, 13 NY2d 296). However, they smack of procedural exploitation of a valid arrest made for a traffic infraction. As indicated, the delay in arraignment of the defendant for the purpose of fingerprinting him was proper in this instance in the light of the defendant’s falsely stated identification. However, when the fingerprinting was done no reason has been offered to support further delay in *629 the arraignment of the defendant upon the traffic infractions of which he had been charged. Once arraigned on those charges, investigation of the defendant’s involvement in the theft of the snowmobile could have proceeded. The fact is, however, that the arrest of the defendant on the crime of possession of stolen property on which he was and now is charged, did not come until after the conclusion of a lengthy interrogation of the defendant ostensibly conducted in reference to the traffic infractions which were the only charges that had been placed against him. A confession to a felony having been secured by the State Police, the arresting officer then handed the defendant traffic tickets for the violations for which he was initially arrested.
It is conceded that the case of People v Tanner (30 NY2d 102) cited by the District Attorney is confusing. Read independently, it could lead to a decision contrary to that reached here. However, in People v Chappie (38 NY2d 112, supra), later decided by the Court of Appeals, explanation was made of the decision earlier reached by that court in People v Tanner. It was specifically noted that the decision reached in People v Tanner was predicated on the theory which was advanced in that case, viz.: the "cat out of the bag theory” (see United States v Bayer, 331 US 532, 540). The Court of Appeals noted that in People v Tanner the contention of the defendant was that his second purportedly validly obtained confession was made solely on constraint of the first invalidly obtained confession. On that theory, the credibility of the defendant, who testified on the Huntley hearing, came in issue. The Court of Appeals noted that since the lower courts had factually determined that the defendant’s testimony was incredible on his contention that the second confession was made only by dint of the force, compulsion and coercion of the first confession, it did not review on the appeal the factual conclusions reached by the lower courts. (See People v Chappie, 38 NY2d 112, 114-115, supra.)
Here, however, as in People v Chappie, the defendant did not testify. The theory advanced here is not that the defendant made his written confession on constraint of the earlier oral confession. The theory presented is the theory presented in People v Chappie and in Westover v United States and Miranda v Arizona, (384 US 436, supra), viz: that the events leading to the second confession were so continuous and without sufficient break that it cannot be said that the defen *630 dant ever at any time returned to the status of one who was not under the influence of prior questioning.
In the light of the explanation made by the Court of Appeals in People v Chappie of its earlier decision in People v Tanner and in light of the facts here presented, disclosing as they do, that only the brief span of one-half hour elapsed between the invalid interrogation by the arresting officer and the later otherwise valid interrogation by the State Police; the presence of the arresting officer during the second interrogation of the defendant by the State Police, coupled with the defendant being continuously in the custody of police officers from arrest to arraignment and handcuffed throughout, while held only on a charge of a traffic infraction, leads the court to the conclusion that the instant case more closely falls within the purview of the fact pattern presented and legal principles announced, explained and applied in People v Chappie (38 NY2d 112, supra) than do those in People v Tanner, or more recently, those in People v Glover (58 AD2d 814).
The resolution of the issue of suppression of an otherwise validly obtained confession tainted to some degree by an earlier improperly obtained confession is first one of legal theory and secondly, one of factual distinction. This court neither propounded the theories, nor determined the offending factual patterns. Its duties lie in classification. Having made a classification under the parameters of binding appellate precedents, the determination is that the written confession of the defendant must be suppressed.
This court is satisfied that the narrow niceties that have been created under the applicable appellate decisions have been properly made in this case. Whether right or wrong, however, it is noted that it has taken this court two weeks of legal research to reach a conclusion that the law requires be resolved by a police officer instantly at the time of interrogation. In instances such as here presented, one wonders if the law is not becoming so exacting that its application transcends the difficult and approaches the impossible from any practical viewpoint of day-to-day law enforcement.